[No. 1865, August 30, 1916.]
MORRIS v. WARING et ux.

SYLLABUS BY THE COURT.
Sections 2757-2758-2759, 2762, 2764, 2765, Code 1915, interpreted, and held that property purchased by a married woman with money borrowed upon her own personal credit, and which money is repaid out of her separate estate, is her separate property.

Appeal from District Court, McKinley County; Herbert F. Raynolds, Judge.

Action by W. H. Morris against T. A. Waring and Lelia W. Waring. From a judgment for defendants, plaintiff appeals. Affirmed.

BERT D. RICHARDS and MARRON & WOOD of Albuquerque, for appellant.

Property purchased from proceeds of unsecured notes by wife is community property and its status is not changed because same was paid from separate property.

Canfield v. Moore, 41 S. W. 718; Heidenheimer v. McKeen, 63 Tex. 229; Yesler v. Hockstetter, 30 Pac. 398; Joffrion v. Bordelon, 14 La. Ann. 618.

A. T. HANNETT of Gallup, for appellees.

Property was separate property of wife.

Secs. 2757, 2759, 2762, 2764, 2765, Code 1915; McKay on Comm. Prop., sec. 221; Id., 210-213.

### OPINION OF THE COURT.

PARKER, J.—The plaintiff, appellant here, brought an action against the defendant, T. A. Waring, one of the appellees, to recover the sum of $3,859.07 in the district court of McKinley county, and recovered judgment for the amount. Execution was issued and returned nulla bona. At the time of the incurring of the debt, the recovery of the judgment, and the issuance and return of the execution, the said defendant and Lelia W. Waring were husband and wife. When the debt was contracted the defendant T. A. Waring was the owner of certain property in the town site of Gallup. Thereafter he conveyed to his wife the said property for the sum of $80, and thereafter had no other property upon which execution could be levied. It was alleged that this conveyance was without valuable consideration, and was for the purpose of hindering, delaying, and defrauding the

plaintiff and other creditors of the defendant T. A. Waring, and was accepted by the defendant Lelia W. Waring with full knowledge of that purpose. It was further alleged that the defendants purchased with the funds of the marriage community certain other property described in the complaint, and that all of said property was properly applicable to the payment of the plaintiff's judgment, and that the defendant T. A. Waring was insolvent, except for his interest in said community property. The plaintiff prayed that the deed from the defendant T. A. Waring to his wife, be declared null and void as against the plaintiff, and that all of the property be held subject to the payment of the plaintiff's judgment.

The answer admitted that the defendant T. A. Waring gave the note described in the complaint, but denied that it was a community debt, and alleged that it was the separate debt of the said Waring. It admits that the said Waring, when the debt was contracted, was the owner of the property first mentioned, and that he conveyed the same to his wife by two deeds, and that he had no other property standing in his name. It denies that said transfer to his wife was made for the purpose of hindering, delaying, or defrauding the plaintiff or other cerditors, and alleged that said deeds were made from the defendant Waring to his wife, for a good, sufficient, and valuable consideration, to-wit, $80. It alleged that all of the other property hereinbefore mentioned was either inherited by the defendant Lelia W. Waring, or was purchased with her separate property and money which was bequeathed to her by her first husband, or with money derived by her from the estate of deceased ancestors. It denied that any of the property described in the complaint was community property, and alleged that it was the sole and separate estate of the defendant Lelia W. Waring. At the conclusion of the trial the plaintiff made requests for findings, which were denied, and the court, of its own motion, found as follows: That the plaintiff recovered the judgment against the defendant Waring, as alleged in the complaint, and that execution was issued and returned nulla bona as alleged therein; that said

judgment was recovered upon a debt which was a community debt of the marriage community of the two defendants, but it was not the individual debt of the defendant Lelia W. Waring, nor a debt upon which her separate property might be taken or sold, and that the judgment still remains unpaid and unsatisfied; when the debt was incurred the property, afterwards conveyed to the wife, stood in the name of the defendant T. A. Waring; and that the value of these lots as unimproved was about $100 in the year 1910; that a dwelling and other permanent improvements were made upon this property during the year 1911 to the amount of $1,200, which improvements and the taxes on the property were paid for by the defendant Lelia W. Waring, and that the value of the lots as improved was substantially $1,900; that it was not alleged in the pleadings nor was there any proof of an agreement between the defendant T. A. Waring and his wife concerning the payment to her of the moneys paid by her upon these improvements, nor was there any claim or proof that it was to be paid; that after the improvements were made, and while the debt of plaintiff existed, the defendant T. A. Waring conveyed this property to his wife for a consideration of $80, and at the time of such conveyance this was the only property standing in defendant's name, subject to the payment of the plaintiff's debt; that the defendant, Lelia W. Waring, inherited from her former husband, who died in 1895, personal property to the amount of approximately $2,000, which she then loaned to her father, and which was repaid to her in different amounts, but had been fully repaid from 12 to 15 years ago, and when repaid was used, in whole or in part, as an investment in a partnership formed between her and her brothers to carry on a trading business at Gallup; that she likewise inherited from her former husband a house and lot which sold for $3,800, a thousand of which was paid in cash and the balance in notes bearing 8 per cent. interest; the interest of these notes was paid semi-annually, and the principal of the notes was not paid until the year 1914; that about the year 1908 her brother, with whom she was engaged

in the partnership business, died, and out of her share
of that business she received substantially $2,500; that
with a portion of this money she bought and still owns
a half interest in a trading partnership known as the Ft.
Wingate Trading Company, and other portions she loaned
out on notes at interest; that the defendants were mar-
ried in the year 1900; that thereafter in 1903, 1910, 1911,
and 1913, the defendant Lelia W. Waring purchased cer-
tain property mentioned in the finding for the sum of
$6,625, and that part of the purchase price for the sum
was borrowed by her from third persons upon her indi-
vidual unsecured note, the property then being deeded
and conveyed to her; that when some of these notes be-
came due she paid them with money borrowed from other
persons, giving them in turn her unsecured promissory
note; that these notes were paid by Mrs. Waring out of
moneys which were either interest received by her on the
loans of the money derived from her former husband's
estate, or the proceeds or profit of her investment of her
separate funds in the partnership transaction with her
brothers, or rents received from the property so pur-
chased by her, or moneys paid to her from roomers whom
she took into her house, or from some or all of these
sources, and none of the personal earnings of the defend-
ant T. A. Waring, nor the proceeds of the business con-
ducted by him, were used in the payment of the said
notes; that just how much of these notes or debts were
paid by rents of the property, how much with interest
derived from loans of Mrs. Waring's separate estate, and
how much with room rent, the evidence failed to disclose,
but it was all paid from the combined sources mentioned.

The court concluded, as a matter of law, that the judg-
ment in favor of plaintiff against the defendant T. A.
Waring was a judgment and debt of the community, and
for which community property may be seized and applied
in payment; that the conveyance to the defendant Lelia
W. Waring by her husband, above recited, was not fraud-
ulent or void as against creditors; that the property pur-
chased by the wife during the existence of the marriage
community with money borrowed by her on her separate

individual, unsecured note, and property conveyed to her as a result of said transaction, did not become community property, but became and remains the sole and separate property of the defendant Lelia W. Waring, and not subject to the payment of the community debt; that her partnership interest in the Ft. Wingate Trading Company is likewise her separate property under the facts found; that the defendants are entitled to judgment dismissing the complaint upon the merits. Whereupon, a judgment of dismissal upon the merits was entered by the court, and the plaintiff appeals.

The principal proposition relied upon by counsel for appellant is that property purchased by the wife with money borrowed on unsecured notes during the existence of the marriage community becomes community property, and its status is not changed because the debt or notes are afterwards paid, in whole or in part, by her separate property. The proposition turns upon a proper interpretation of our statutes. The pertinent provisions are as follows:

"Sec. 2757. All property of the wife owned by her before marriage and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is her separate property. The wife may without the consent of her husband convey her separate property.

"Sec. 2758. All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is his separate property.

"Sec. 2759. The earnings of the wife are not liable for the debts of the husband."

"Sec. 2762. The separate property of the wife is not liable for the debts of her husband, but is liable for her own debts, contracted before or after marriage."

"Sec. 2764. All other property acquired after marriage by either husband or wife, or both, is community property; but whenever any property is conveyed to a married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property.    *    *    *

"Sec. 2765. The property of the community is not liable for the contracts of the wife, made after marriage, unless secured by a pledge or mortgage thereof executed by the husband."

See Code 1915.

We start with the proposition, as appears from the above provisions, that all property owned by husband or wife before marriage and all afterwards acquired by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, remain the separate property of the spouse so owning or acquiring it. We have the further proposition that the wife's earnings are not liable for the husband's debts. In the case at bar, therefore, this property is the separate property of the wife, it all having been paid for out of the earnings of the wife and out of the proceeds or income of her separate property, unless the fact that she bought some of it on her own personal credit, and afterwards paid the obligation out of her separate estate, changes the rule.

The contention of appellant is that the purchase on credit, or the borrowing of money on the wife's own personal credit, with which to purchase the property, makes the property community property. This contention is unsound both in principle and upon the weight of authority. In considering the question it is to be borne in mind that the community is, under no circumstances, bound by the contracts of the wife, her separate property alone being chargeable with the payment of her debts, unless the husband secures the same by pledge or mortgage of the common property. It is also concededly true that property which is separate may be exchanged for other property, and the latter will retain the same separate character. Under our statutes the rents, issues and profits of separate property remain separate, and the earnings of the wife remain her separate property. The doctrine that property acquired during marriage by exchange therefor of separate property remains separate property is contrary to the absolute letter of the statute, and was no doubt formulated by the courts out of necessity, and to render the right to separate property effective. If "all other property acquired after marriage   *   *   *   is community property," as is declared by the letter of the statute, then neither husband nor wife during coverture can acquire separate property except by gift, bequest, devise, or descent. If they have separate property, they must

keep it just as it is, else if they sell or exchange it and invest in other property, the property so acquired will become common property. The letter of the statute would bring about this result. But the courts wisely ingrafted upon the doctrine the principle that where property is acquired during marriage by the sale or exchange of separate property, it remains separate property. And in this case, if the wife had exchanged her separate property for the property in question, there would be no doubt that it would be separate property. Or, if the had sold her separate property, and invested the proceeds in the property involved, there would be no question as to its separate character. But she borrowed the money with which to purchase the property upon her individual credit. In so doing she incurred an obligation which in no event could become a liability of the community, and one which could be enforced only against her separate estate. The community incurred no liability whatever, and to take the property would work a forfeiture of the same, not only against her, but against her creditors. Her creditor has no remedy against the community, and if the property is to be forfeited, his claim will be defeated. This money must have been loaned upon the credit which she had by reason of her ownership of separate property, for her creditor knew he could not look to the community property for payment. Even if she owned no other separate property when she purchased the property in question, her creditor, at once, upon the passing of title to her, might look to the same for payment. In essentials the purchase of property by a married woman, under statutes like ours, with money borrowed on her individual credit, is an exchange of separate property for separate property. The husband alone can contract a common debt; therefore the wife's creditor looks alone to the wife's credit for repayment. This credit of the wife is usually based upon the property which she had prior to marriage, or which she acquired afterwards by gift, bequest, devise, or descent. But suppose the wife brings into the marriage community no separate estate and afterwards acquires none in the ways mentioned in the statute. All

that she has under such circumstances is her credit. This credit is not an asset of the community, for she is in no way liable for the community debts. This credit must belong to the wife as her sole and separate property, and she brings it into the community and it must necessarily remain her separate property.

It is true that credit is not property in a strict legal sense, but potentially it is property of the highest order, and quite as valuable as actual property, and often of even greater value. In the case of the husband the proposition is different. If, by means of his own personal credit he purchases property during the marriage community, not only his separate estate becomes liable for the payment of the same, but all of the common estate is likewise liable. If the community is liable for the debt, it must certainly take the property for which it becomes liable. Therefore his credit belongs to the community and not wholly to himself.

We have found no discussion of the question in the cases along just these lines, but we believe this explains the situation correctly on principle.

The question has been before the courts in the community states. In Louisiana the wife has no general power to contract, unless the husband consents, in writing. If he permits her to exceed her powers to contract, he makes himself liable, and it becomes a community debt, and the property necessarily becomes common. The limitations on her power to purchase on credit are that she have some paraphernal property, which should bear such fair proportion to the purchase price as that the same and the property purchased would be sufficient security for the purchase and enable her to make the purchase with reasonable expectation of being able to meet the deferred payments. McKay on Community Property, § 219; Fortier v. Barry, 111 La. 776, 35 South. 900. This rule would seem to require each case to be decided upon its own facts and to furnish no legal guide under statutes like ours.

In Texas property purchased on credit by the wife falls into the common fund. The reason for this is that in

Texas the wife, except for necessaries, or for expense incurred for her separate estate, cannot bind her separate estate. Her contracts may be enforced against the common estate, and hence the community estate takes the property acquired on credit by her. McKay Community Property, § 220; Heidenheimer v. McKeen, 63 Tex. 229; Wallace v. Finberg, 46 Tex. 35, 44; Epperson v. Jones, 65 Tex. 425.

In California the statute is the same as ours. In Schuyler v. Broughton, 70 Cal. 282, 11 Pac. 719, it was held that money borrowed by the wife to invest in real estate will be regarded as community property unless borrowed upon the faith of her existing separate property, which she mortgages or pledges as security for its payment, or against which her contract may be enforced. This doctrine was somewhat modified in Flourney v. Flourney, 86 Cal. 286, 24 Pac. 1012, which is to the effect that money borrowed by the wife upon the faith of her existing separate property is enough to make it separate property. See, also, Heney v. Pesoli, 109 Cal 53, 41 Pac. 819, to the same effect. The doctrine in California, therefore, seems to be that money borrowed by the wife upon the faith of her separate estate, or which may be collected out of the same, remains her separate property, and is in accord with our view. As we have heretofore pointed out, under our statutes, money can be borrowed by a wife in no way other than upon the faith of her separate property; it alone being liable for her contract.

In Washington a contrary doctrine prevails. Thus, in Main v. Scholl, 20 Wash. 201, 54 Pac. 1125, after citing and relying upon the earlier case of Yesler v. Hochstettler, 4 Wash. 349, 30 Pac. 398, it is said:

"It was the evident purpose of the Legislature to place the spouses upon a footing of equality as nearly as possible. Let us suppose that this transaction had been that of the husband. In that event it would scarcely be questioned that the property so acquired would have become community property. Is there any reason discoverable in the legislative enactment for regarding it differently because the wife, in-

stead of the husband, is the operator? To depart from the plain letter of the statute is to embark upon a sea of uncertainty."

Idaho seems to take the same position. Northwestern & P. H. Bank v. Rauch, 7 Idaho, 152, 61 Pac. 516.

The argument upon which the doctrine in Washington is based seems open to substantial criticism. It seems to be based upon the proposition that the law has been enacted with the purpose in view of placing the two spouses upon a footing of equality. We do not so understand the community statutes like ours. As is said in McKay on Community Property, § 215:

"The argument of the court in Main v. Scholl is based on the assumed equality of the spouses. In many respects they are equal in others they are not. Each has the conceded power to purchase on credit; so far they are equal; but when we turn to the nature of the obligation incurred by each a wide difference appears. He can, and she cannot, bind the common fund; he can purchase on credit and give a binding obligation for the future delivery of community property or funds; she has no such power; if she purchases on credit she must give an obligation for the future delivery of her separate funds or property, for she has no power to give any other. They are totally different, in a legal sense, in respect to their power to contract debts, and in that respect only is their likeness or unlikeness important, so far as the present inquiry is concerned."

It seems perfectly clear to us from what has been heretofore said, and upon the reasoning in the Texas and California cases, that money borrowed by a married woman upon her own individual credit remains her separate property, and that likewise, property purchased with such money remains her separate property.

Appellant complains of the failure and refusal of the court to find specifically how much of the moneys invested in the properties in question were separate property and what pieces of property were so purchased in whole or in part. There is no foundation for this objection. The court found that all of the property in question was either inherited or purchased with moneys borrowed by the defendant Mrs. Waring, which said moneys were repaid out of moneys which were either in-

terest received by her on the loans of money derived from her former husband's estate, or the proceeds or profits of her investments of separate funds, or rents received from the property so purchased, or from moneys paid to her by roomers which she took into her house, or from some or all of these sources, and that none of the personal earnings of the defendant Mr. Waring, nor the proceeds of any business conducted by him, was used in the payment of said loans by Mrs. Waring.

Appellant complains of the conveyance by the defendant Mr. Waring to his wife of town lots worth $1,900 for a consideration of $80, as a legal fraud upon the rights of creditors. The court found that the lots were worth about $100, and that Mrs. Waring had improved the same with her own separate funds to the amount of about $1,200. The allegation in the bill of complaint was that the conveyance from Mr. Waring to his wife was without any valuable consideration, and was made with the intent and purpose of hindering, delaying, and defrauding creditors, thus charging an actual, not a legal, fraud. The court found as a conclusion of law that the conveyance to the wife by the husband was not fraudulent or void as against creditors. There is no testimony brought up in the transcript, and we, therefore, must take the findings of the court as correct. The issue made by the pleadings was as to whether there was any valuable consideration for the transfer, and whether the transfer was made with intent to defraud creditors. The court found with the appellees on both these issues, and there is nothing in the record from which it can be said the findings were incorrect.

From the foregoing it appears that the judgment of the district court was correct, and should be affirmed; and it is so ordered.

ROBERTS, C.J., and HANNA, J., concur.