The executors of the estate of William Huggins, deceased, appeal from the transfer tax assessed by the comptroller, underP.L. 1909 ch. 228, and the subsequent amendments, against the estate of Louis Huggins, deceased.
Louis Huggins died January 8th, 1918, a resident of Missouri. He was a joint owner with his brother William in considerable property, including some shares of stock of New Jersey corporations, but other than this left no estate whatever. William Huggins, as the survivor, became the sole owner of this jointly-owned property; after his death his executors sought to transfer the corporate stocks, but the comptroller refuses his consent thereto unless the tax assessed by him in respect to the "transfer" from Louis Huggins be paid.
The affidavits submitted to the comptroller set forth that the two brothers, Louis and William, were men of advanced years; that all their lives they had been exceptionally close and intimate; had lived in the same house, had the same office, a single desk, shared the same friends, amusements, business activities, bank account and the like; the property which they accumulated was considered and treated by them as joint or common property — anything which belonged to either belonged to the other — and this was so, notwithstanding that the formal legal title to different portions of the *Page 277 
property might have been taken in the individual name of one or the other.
On March 22d 1917, the two brothers, being then both about seventy-five years of age, mutually executed an agreement, and pursuant to the provisions thereof conveyances were executed by them vesting in them as joint tenants, with the right of survivorship, the title to all property, real and personal, held by them and each of them. The agreement (omitting formal parts) reads as follows:
"Witnesseth, That whereas the legal title to sundry tracts of real estate and sundry articles of personal property, accounts, stocks, notes, bonds, choses in action and securities is vested in the said Louis Huggins, in which the said William Huggins has a beneficial and equitable interest as joint owner thereof with the said Louis Huggins; and whereas, the title to sundry tracts of real estate and sundry articles of personal property, accounts, stocks, notes, bonds, choses in action and securities is vested in the said William Huggins in which the said Louis Huggins has a beneficial and equitable interest as joint owner thereof with the said William Huggins; and whereas, it is desired by the said Louis Huggins and the said William Huggins to settle, adjust, fix and determine the rights of property of each of them in and to all of said property, real and personal, so held as aforesaid by said Louis Huggins and said William Huggins; and
"WHEREAS, Considering the situation and character of said property, real and personal, so held by said Louis Huggins and said William Huggins, they deem it not best to their interests to partition and divide the same in two parcels to be held in severally by them, but they deem it wise and prudent, as being for the best interest of both of them, and as being a fair and just settlement of the rights of each of them therein that the title to all of said property, real and personal, be vested in both of them, the said Louis Huggins and the said William Huggins, to be held by them jointly with the right of survivorship in the survivor of them; and
"WHEREAS, The said Louis Huggins and the said William Huggins are each possessed of an individual estate which they deem advisable for the best interests of both of them to own and hold like their joint estate by joint title with the right of survivorship in the survivor of them:
"Now, therefore, The said Louis Huggins and the said William Huggins, in consideration of the premises above recited and of the covenants entered into by each with the other herein, do covenant and agree with each other that from and after the execution hereof the legal title to all said property, real and personal, wherever situate, including all accounts, stocks, bonds, notes, securities and choses in action held by either of them in which the other has an interest, and all such property, real and personal, held by either of *Page 278 
them individually, and all such property, real and personal, held by them jointly, and all such property, real and personal, held by any other person or corporation in which they, or either of them, have an interest, legal or equitable, shall vest in both of them, the said Louis Huggins and the said William Huggins, jointly to have and to hold the same unto them, the said Louis Huggins and the said William Huggins, jointly and unto the survivor of them forever.
"And the said Louis Huggins and the said William Huggins do further covenant with each other that all necessary and proper assignments, transfers, deeds and conveyances of said property, real and personal, will be made as speedily as practicable, to vest the full and complete title, legal and equitable, of, in and to all of such property, real and personal, in the said Louis Huggins and the said William Huggins, jointly and in the survivor of them as above provided."
It is contended by appellants (1) that there was no transfer of any property or interest therein from Louis to William at Louis' death, and hence no tax could be assessed thereon; (2) that the only transfer, if any, was at the time of the creation of the joint tenancy, and that the transfer at that time was merely a technical legal one, which simply put into legal form the equitable and actual situation which had always theretofore existed between the brothers, and hence is not taxable; (3) that such transfer as was made at the creation of the joint tenancy was in nowise donative in character, but for valuable consideration, and hence not taxable.
I have little difficulty in determining that the change of interest, ownership or possession (whatever it may be called), which takes place at the death of the first of two joint tenants was not taxable under our statute as it existed in 1917, or at Louis' death, if that change be considered simply by itself, uncomplicated by any question of participation by the joint tenants in the creation of the joint tenancy.
Let us assume, for instance, that the property held in joint tenancy was conveyed to them in joint tenancy by a third party, without consideration from them, or either of them, and without request from them, or either of them, that the conveyance be in joint tenancy, and consider the "transfer" or "succession" which occurs on the death of one of the joint tenants. *Page 279 
Section 1 of the act specifies the transfers which are made taxable. The tax is imposed on transfers "in the following cases"; ergo, transfers not coming within the ensuing category are not taxable.
Subsection 5, of section 1, expressly makes the "succession" of a surviving joint owner a taxable transfer; but this provision (vide P.L. 1922 ch. 174) was not written into the statute until after the death of Louis.
Subsections 1 and 2 deal only with transfers by will or intestate law. The "succession" by survivorship does not fall within either of these classes, for it is an incident of the joint estate which takes place irrespective of whether the other joint tenant dies testate or intestate. A joint tenant may dispose of his interest, thus severing the joint tenancy, during his lifetime, but cannot do so by will.
Neither does the "succession" of a surviving joint tenant come within the scope of subsection 3, for it is not a "transfer" from the deceased joint tenant by "deed, grant, bargain, sale or gift."
Finally, it is not taxable under subsection 4 — for, assuming that it comes within the meaning of "an estate (or interest) in expectancy of any kind or character which is contingent or defeasible," it is not transferred by any instrument made by the deceased joint tenant. Section 26 of the statute provides that the words "estate" and "property" (the transfer whereof is made taxable) means "the interest of the testator, intestate,grantor, bargainor or vendor" — the deceased joint tenant is none of these — "passing to the legatee, devisee, heir, next ofkin, grantee, donee or vendee" — the surviving joint tenant is none of these, as regards the other joint tenant. Neither is the succession of the surviving joint tenant a transfer "by distribution by statute, descent, devise, bequest, grant, deed, bargain, sale or gift" from the deceased joint tenant. See section 26 of the act. Assuming, as I have said, that it comes within the scope of subsection 4, I think it is clear that that subsection contemplates its taxability as a tranfer from the original creator of the joint tenancy, and not from the deceased joint tenant. *Page 280 
Compare section 3, dealing also with "instruments" creating estates in expectancy, c., and section 5, providing that the taxes shall be due and payable at the death of the "testator,intestate, grantor, donor or vendor."
As a matter of fact, the "succession" of the surviving joint tenant, I take it, is not a transfer by, or a successionfrom, the deceased joint tenant at all, any more than the "succession" of a remainderman is a transfer by, or a succession from, the prior life tenant. The change of interest which takes place on the death is in nowise the act of the decedent nor a succession by operation of law, but is the act of the original creator of the estate. The additional interest which the survivor gains on the death of his co-tenant comes to him, not from the co-tenant, but from the original grantor. Essentially, the original grantor conveys to him, not only a half-interest defeasible at his death if he predecease his co-tenant, but also a contingent remainder in the other half if he survive the co-tenant. The fact that the right of survivorship may be terminated at the will of either co-tenant during the joint lives does not alter the situation. The fact that the deceased co-tenant has failed to exercise his right to deprive the other co-tenant of his contingent half interest in "remainder," in nowise changes the fact that the survivor takes that contingent half interest "in remainder" from the original grantor and not from the deceased tenant. It cannot be said, in this regard, at least, that a man does an act by failing to do an act.
So far, however, as concerns the question of taxability of transfer from the deceased joint tenant under our statute, we have a very different situation with which to deal, if the deceased joint tenant himself created or participated in the creation of the joint tenancy, as is the fact in the case at bar.
By the third paragraph of the agreement of 1917 both brothers acknowledge that each has separate individual property which he is transferring to joint ownership with right of survivorship. That is competent in this proceeding as an admission by Louis and William that Louis had and was transferring such individual estate. *Page 281 
The effect of the 1917 agreement (assuming for the moment that the individual property of each was equal in amount) was substantially to transfer the property theretofor, individually owned by each (both as to estate during his life, and remainder), to an estate in each for the joint lives of both, with remainder to whichever one of the two should survive the other — contingent also upon there being no severance of the joint tenancy by either during the joint lives.
The fact that, technically, there was an immediate transfer from Louis to William of only a half interest in his original estate, is of no significance; it is the net substantial result of the entire transaction that is to be looked at. William at the same time made an immediate transfer of a half interest in his original estates; so that the substantial nature of the entire transaction was as set forth above.
No severance took place during the joint lives, and on Louis' death William came into possession and enjoyment, by the original transfer from Louis, of this "remainder" interest, which is an estate or interest in expectancy, contingent or defeasible, in the shares of stock of the New Jersey corporations, and was transferred by Louis by an instrument taking effect after 1909. It, therefore, is taxable under the provisions of subsection 4 — at least prima facie.
It may be added, in case it be material (and I am inclined to think it is), that the instrument or agreement was a transfer by bargain intended — so far as the "remainder" interest is concerned — to take effect in possession or enjoyment at or after the death of the transferor, Louis. This is obvious, not only because the parties to the agreement must be deemed to intend the legal effect and meaning of their agreement, but also because of the age of the two men and the fact that the incident of right of survivorship is so prominently and especially mentioned, repeatedly, in the agreement. There seems no doubt, from the facts, that that is the one thing they desired to establish and effectuate.
Let us now turn to the question of consideration. It is clear, I think, from the history and purpose of the legislation *Page 282 
on the subject, that by this taxing statute the legislature intended to tax only transfers of a donative nature, and, so far as I know or can recollect, there has never been any attempt made in this state to levy a tax on any contrary theory. Under subsection 3 of section 1, if the transferor received a consideration of substantially equal value to the property transferred by him, his transfer would not be deemed taxable. Likewise, if a decedent gave property by will to a man from whom he had in his lifetime received property of equal value in consideration of his promise to make the testamentary gift in question, the testamentary "gift" would probably not be deemed taxable.
Assuming this to be so, the present case goes quite beyond that situation. Here we have what amounts to mutual promises to make wills in favor of each other, to take effect if the beneficiary survive the testator. The two promises are of equal value, but the actual effect or result is a testamentary benefaction by one only, without any property of equal value having been received by the testator's estate in exchange for the gift. This situation, to my mind, does not come within the implied exceptions based on the legislative intent.
So far we have considered the matter only with regard to the individually-owned property which each of the brothers, as acknowledged in the agreement itself, had and transferred to joint ownership with survivorship. The tax has been assessed upon the basis of a previous individual ownership of the entire half interest in the whole of the joint estate created by the agreement, or perhaps it would be more accurate to say, upon the basis of the absence of any prior joint tenancy or right of survivorship in any of the property. I am unable to find that this was erroneous. It is true that the agreement refers to the other property as being "jointly owned" — that they are joint owners, equitably and beneficially, and, perhaps, legally, of this other property mutually transferred by this agreement — but nowhere does it say that such joint ownership is in technical joint tenancy, or that it has the incident of survivorship. The same thing is true as *Page 283 
to the affidavits submitted to the comptroller. The affiants speak variously of "common property"; "jointly held"; "common fund"; "community of interest"; "jointly interested"; "joint owners"; "owning everything in common."
The most that might be argued for appellants is that this evidence is in equipoise as between joint tenancy and tenancy in common. But even that is not the fact, for "joint ownership" does not mean "joint tenancy" alone; partners and tenants in common are joint owners, though not joint tenants.
Joseph Morton, the attorney for the brothers, says the purpose of the execution of the agreement was "to establish in proper legal manner the arrangement, agreement and understanding long time theretofore had between the two men respecting the title to their properties." This is not the same thing as saying that the equitable ownership prior to the execution had been in joint tenancy; rather does it mean that they had long before agreed that they would eventually put their property into an estate in joint tenancy. If there had in fact been a prior equitable joint tenancy, the presumption is that Morton would have said so.
To my mind the proofs not only do not establish a prior joint tenancy, or right of survivorship, in any of the property, but rather preponderate in the other direction. Even were the evidence in equipoise, the result, I think, would be the same, for the law does not favor joint tenancies, and the existence of such would be required to appear by at least a preponderance of the evidence.
The assumption was made herein that the shares which each brother contributed to the joint estate were equal. This assumption is, to my mind, warranted by the proofs. Consideration of the affidavits leads one to the conclusion that the shares or interests of the brothers in the property were substantially equal.
The tax was assessed under the "ratio clause" in section 12 of the statute. No objection was been taken to the method of computation in this regard, nor to the rates, and it is therefore unnecessary to make any examination in this behalf.
The New York court of appeals had before it in Matter ofOrvis, 223 N.Y. 1, a case essentially similar. Two brothers, *Page 284 
partners, took from a partnership funds a sum in which they had an equal share as partners, and established it as a fund in equal shares by them, but to go to the survivor on the death of either. It was there held that the "succession" of the survivor was taxable under the section of the New York statute corresponding to our subsection 3 of section 1, as a transfer intended to take effect at death, and not exempted by consideration.
The assessment under review will be affirmed.