Henry Deutz, resident of New Jersey, died intestate February 7th, 1925. In assessing the tax due from his estate under the Transfer Inheritance Tax act (P.L. 1909 ch. 228, as amended), the comptroller included an item of $1,195.32 for tax assessed on an alleged transfer from decedent to his brother Joseph, one-half the good will of a partnership between the two brothers (which one-half share of good will was appraised at $23,906.47).
Decedent and his brother entered into a partnership in 1919, in Mexico; the business was to be, and was, carried on in Mexico, by Joseph as the active partner. Decedent was an inactive partner and lived in New Jersey. The partnership agreement was (essentially) for ten years; and it continued until Henry's death. The agreement provided (inter alia) as follows:
"Ninth: * * * The company will not dissolve in case of the death of one of the partners happening within the term of the company or one of its extensions, and will continue as agreed, between the surviving partner and the legal representative of the deceased one, without doing violence to what is stipulated in the following clause; said representative will have the same rights as the deceased partner had as per this document, but the survivor alone will continue as administrating partner, he being the only one to use the company's signature; and he being the only one possessing the powers treated of in clause 7th.
"Tenth: In case of the death of one of the partners within the time of the company's existence or one of its extensions, the heirs of the deceased will be paid the capital belonging to deceased as per the next forthcoming balance in five annual installments each equaling the fifth part of said capital; said heirs will likewise enjoy the assets and suffer the losses in proportion to the capital remaining in the company in virtue of the annual payments spoken of above. Six months at the latest after the death takes place, the general balance will be made which was to be made at the end of the year, so as to fix the liquid assets belonging to each partner, so that the heirs of the deceased may have at their disposal those belonging to him."
It will be observed that by this agreement the partnership is not dissolved at the death of one partner; after such death the partnership assets are owned by the surviving partner and the legal representative of the deceased partner; the *Page 673 
proportionate share or fractional interest in the partnership assets owned by the "heirs" or legal representative of the deceased partner being reduced annually by the payments to be made by the surviving partner.
The total partnership capital is to be determined by a balance to be arrived at on an account stated by the surviving partner and the legal representative of the deceased partner.
This account was stated, and the balance arrived at, between the surviving partner and the present appellant (as administrator of the deceased partner, Henry), some seven weeks after Henry's Death. This balance sheet showed the decedent's share of the capital to be $153,228.61, Mexican, or $76,614.31, United States. The assets specified on this balance sheet include only merchandise inventory, furniture and fixtures, real estate, cash and accounts receivable. No item of good will is included.
In the comptroller's computation and assessment of transfer inheritance tax with respect to the estate of Henry, he determined that the partnership did have a valuable good will, which he appraised at $47,812.94 (United States), and he therefore added this item to the assets on the balance sheet and thus increased the net assets by the same amount. He determined that by virtue of the provisions of the partnership agreement, the entire good will at decedent's death became the property of the surviving partner, without any compensation or allowance therefor to decedent's estate. Accordingly, he assessed a tax of $1,195.32, as on a transfer to the surviving partner of one-half the good will.
From this assessment the decedent's administrator appeals.
His contentions are substantially as follows:
1. Good will is not an asset.
2. The partnership had no asset of good will.
3. If there was an asset of good will, it was of no value or not of the value placed upon it by the comptroller.
4. There was no transfer of good will.
5. If there was a transfer of good will it was not taxable.
6. If there was a taxable transfer of good will, the tax should not be levied against appellant. *Page 674 
Good will, of course, is an asset — In re Bottomley, 92 N.J. Eq. 202
(an asset of a corporation); In re Hall, 99 N.J. Law 1
(an asset of a partnership) — although of course not every corporation or partnership has such an asset.
That this partnership had an asset of good will is amply justified by the record. It was engaged in an established mercantile business (retail hardware) and in the year prior to decedent's death had made a profit of $24,990.52 (twenty per cent. on its capital) and for each of the two years before that had likewise made a profit of about twenty per cent. on its capital. There was no proof before the comptroller tending to show the absence of an asset of good will, except the mere fact that it was not carried on the books of the partnership as an asset.
An agreement between partners that there is no good will, or that it is of no value, may well be binding on the partners and their representatives, but it cannot preclude the state from taxing at actual value. Re Hellman, 172 N.Y. Supp. 671;affirmed, 226 N.Y. 702; In re Halle's Estate,170 N.Y. Supp. 898.
The value of the good will was appraised at $47,812.95. This valuation was arrived at by taking the yearly average net profit (after deducting six per cent. interest on the capital) for the normal years previous to decedent's death and multiplying by three. Gleason Otis, Inheritance Taxation (4th ed.) 599,600. This is a generally accepted method of determining the value of good will, and was approved by this court In re Hall,supra; and also, inferentially, in the same case on certiorari.99 N.J. Law 1 (at p. 5).
It is urged that Mexico was in a state of revolution, and that by reason thereof the value of the good will was destroyed or greatly lessened. There is no evidence in the record to show that a condition of revolution existed in Mexico at the time of decedent's death. Such evidence would therefore not be available before this court on appeal, even if produced and offered. In rePierce, 89 N.J. Eq. 171. No such evidence is in fact offered to this court, but it is contended that it is a fact of which this court will take *Page 675 
judicial notice. This may at least be doubted — but assuming that it is so, it must also be assumed that the tribunal below took the same judicial notice and gave it due weight and consideration in arriving at its conclusion. There is nothing to show the contrary and the burden is upon appellant to establish error. Inre Pierce, supra. Appellant argues that the good will was valueless because decedent could not have borrowed money upon his share thereof. This argument fails not only because that which is asserted as a premise is itself not proven, but because it isnon sequitur. An appurtenant right of way could not be separately sold or borrowed against, and yet might add greatly to the value of the property to which it was appurtenant.
The partnership had an asset of good will; decedent owned an interest therein, as in all the partnership assets. The business did not cease at decedent's death, hence the good will did not then cease to exist as an asset. It follows necessarily that there must have been a transfer to someone, at decedent's death, of the interest he had in that asset in his lifetime.
It would appear from the ninth and tenth paragraphs of the partnership agreement quoted earlier herein, that on the death of Henry his "legal representative" became a member of the partnership in Henry's Place (being, however, rather a silent partner than an active partner); and that this legal representative "having the same rights as the deceased partner had" therefore succeeded to Henry's interest in the partnership. To the "heirs" of Henry there accrued the right to be paid Henry's share of the capital in five annual installments, and they are to receive profit or suffer loss in the continuation of the partnership business proportionately to the share of capital remaining in the company from time to time as diminished by these annual payments. The interest of the "heirs" and of the "legal representative" in the assets of the firm would of course be reduced each time one of the annual payments was made, and the interest of the surviving partner correspondingly increased — ultimately, of course, to total ownership. *Page 676 
Presumably "legal representative" means executor or administrator — in this case the administrator — and "heirs" means beneficiaries under a will or next of kin — in this case the next of kin. Such was the tacit assumption by both sides on the argument.
Obviously then there are three transfers resulting under the terms of the agreement, at or after the death of the partner — (1) a transfer of some interest in the partnership assets (including the good will), from the decedent to the administrator; (2) a transfer of the main, beneficial interest to the next of kin; and (3) a transfer of decedent's interest in the partnership property to the surviving partner on his paying over the decedent's share of capital to the next of kin.
The amount of decedent's share of capital, to be paid by the surviving partner, as arrived at and agreed on between the latter and the administrator, as has been said, included nothing for decedent's share of the good will. This was not because of any fault or generosity on the part of the administrator; he was bound in this respect by the prior acts of the decedent. The partners had included no item of good will in their prior annual balance sheets or accountings, and by a provision in the partnership agreement, these annual accountings, once made and agreed on by the partners, were conclusive. This conduct of the partners amounted to a supplement or amendment to the agreement, so that the latter stood, at Henry's death, as if it had originally contained a provision that a deceased partner's estate should receive nothing for good will.
The result of the agreement, then, is that the surviving partner ultimately gets the decedent's share in the partnership assets, and pays full value therefor, less the value of decedent's share in the good will; he gets decedent's share in the good will and pays nothing for it. Stripped to its bare essentials, the agreement effectuates an ultimate transfer, at Henry's death (if he should die first, as he did), of approximately seventy-five per cent. of his share in the partnership, or the value thereof, to his next of kin, for which they pay *Page 677 
nothing, and twenty-five per cent. to the surviving partner for which he pays nothing.
It seems equally evident that the transfer in the instant case is taxable under the statute — under the third subsection thereof. It is a transfer made by a resident — and by "deed, grant, bargain, sale or gift * * * intended to take effect in possession or enjoyment at or after the death of the grantor, vendor or donor."
The transfer results by operation of the partnership agreement. That agreement partakes of the nature of a deed and also a bargain or contract, and certainly comes within the scope of the statutory category just mentioned. Assuredly decedent intended that the transfer should take place at or after his death, when he expressly so provided in the agreement. The fact that the transfer was contingent — that it might have been the other partner who died — is, of course, not material; it does not alter the fact that it did provide for this transfer (and intended so to provide) in case this contingency happened.
The mutuality of the agreement between the partners — the fact that each agreed to the same thing — that Joseph made the same agreement that Henry did, and that it was just as likely that Joseph would die first as that Henry would — does not prevent the transfer from being taxable. In re Huggins, 96 N.J. Eq. 275;affirmed, sub nom. Fairleigh v. Bugbee, 103 N.J. Law 182.
Nor does the fact that the ultimate transfer of Henry's share of the good will to Joseph is a part of a single transfer of Henry's entire share in the partnership assets to Joseph for which Joseph pays valuable consideration. It is not enough that Joseph pays valuable consideration — the payment must beadequate in value; to the extent that it is inadequate — to the extent that the transfer is a gift — it is taxable. Cf. In reHall, 94 N.J. Eq. 398 (at p. 404). In the instant case the payment is inadequate by the value of the share of good will; the transfer is a gift to just that extent, and, of course, is tantamount to a gift of the share of good will. *Page 678 
The tax imposed by the act is intended to reach all transfers from a decedent to his successors, and does reach all such transfers to the full extent that this state has the power to tax them. Carr v. Edwards, 84 N.J. Law 667. The court was there dealing with transfers by will and intestate succession — but it cannot be doubted from a reading of that opinion, and of the statute, and a consideration of the history of the legislation, that the legislature had the same intent, and has made that intent effective, under the provisions of subsection third, as to transfers made in decedent's lifetime in contemplation of death or intended to take effect at or after death. It therefore is here expressly so held. See, also, Carter v. Bugbee,91 N.J. Law 438; affirmed, 92 N.J. Law 390, and Fagan v. Bugbee,105 N.J. Law 85; 143 Atl. Rep. 807; also MacClurkan v. Bugbee,105 N.J. Law 89.
Whatever transfer is actually taxed, however, the tax is computed upon the value of the property passing to the ultimate beneficiary. In re Dellinger, 94 N.J. Eq. 409 (at p. 412). In that case, also, the court was speaking of transfers by will or intestate succession, but it cannot be doubted that the same principles apply in the case of transfers under subsection third; and it is accordingly here expressly so held. The statute contains no separate or different provision for ascertaining or computing the tax in the one class of cases than in the other.
It is contended by appellant, however, that even though the legislature intended to tax such a transfer as the one in question, and has so expressed itself, nevertheless this state is without power to levy the tax because the partnership was a Mexican partnership and all its assets were located in Mexico. Citing Frick et al. v. Pennsylvania, 268 U.S. 473, and SafeDeposit and Trust Co., c., v. Virginia, 280 U.S. 83.
The latter case is scarcely relevant, for it involves an ordinary tax upon property, not on the transfer thereof. TheFrick Case involves a transfer tax such as the one now subjudice, and holds that a state where a decedent resided and was domiciled has no power to tax the transfer of such *Page 679 
of decedent's tangible personal property as is located outside of that state. If, then, the present tax was levied on the transfer of tangible personal property owned by Henry Deutz, situated in Mexico, the Frick Case would be controlling in favor of appellant.
The present tax, however, is not levied upon the transfer oftangible personal property of decedent in Mexico — it is levied on the transfer of intangible property, to wit, his interest in the partnerhsip; and the same court has expressly held inBlodgett v. Silberman, 277 U.S. 1, that such a tax on the transfer of intangible property is valid and within the power of the state of decedent's domicile; and that decedent's interest in a New York partnership (of which he was a member) wasintangible personal property and the transfer thereof could be validly taxed by the state of his domicile.
Appellant does not contend that under the law in Mexico decedent's interest in that partnership was not intangible personal property; nor, from the record, did he so contend before the comptroller; there was no evidence as to the Mexican law on this point. It must be deemed that decedent's interest in the partnership was intangible property — not merely because appellant makes, and has made, no contention to the contrary, but also because appellant concedes that the tax on the transfer of decedent's interest therein to the next of kin is valid. This is not only impliedly conceded, by the fact that he has not appealed from the tax on that transfer, but is also expressly admitted in his brief.
As has already been seen, the transfer of decedent's entire interest in the partnership is accomplished by the one instrument; by which approximately seventy-five per cent. is ultimately transferred to the next of kin and the other twenty-five per cent. to the surviving partner. The tax on the seventy-five per cent. transferred to the next of kin would not be valid, if that seventy-five per cent. were not intangible — hence, the tax being concededly valid, the seventy-five per cent. must be intangible. Since the seventy-five per cent. transferred to the next of kin is intangible, it seems incontrovertible that *Page 680 
the transfer of the other twenty-five per cent. to the surviving partner is intangible and the tax valid.
Moreover, that which was transferred to the surviving partner was decedent's interest in the good will, and assuredly good will is intangible; hence, decedent's interest in it was intangible (whatever might be true as to his interest in other assets), and the tax on the transfer thereof is valid.
The final contention of the appellant is that the tax, if otherwise valid, should not be levied against the appellant administrator. This contention is based on the fact that it is the surviving partner who gets the decedent's interest in the good will, and that it is he who should pay the tax, but that appellant has no property passing to the surviving partner out of which to collect the tax, nor any other means of collecting it from him.
It is true that section seven of the statute provides that an administrator shall deduct the tax before paying over any legacy or distributive share; but it does not say that the tax is not collectible by the state unless the administrator is able to deduct the tax in that way. On the contrary it is provided in the sixth paragraph of section one that administrators and executors of a decedent shall be personally liable for all taxes under the act until they have been paid; and in section 5, that all taxes shall be a lien on all the decedent's property until paid or seemed to be paid. It is quite clear that the legislature intended that the decedent's estate should pay the tax whether or not it was collectible from the legatee, distributee or donee,c.
This the state has a perfect right to do. The tax is on the transfer, not on the property received by the legatee or donee. Decedent makes the transfer, and the tax is properly collectible out of decedent's estate. If, by reason of the location of the property, and the particular circumstances of the transfer, the tax cannot be collected by the administrator from the recipient of the property, it amounts, in effect, to precisely the same thing as if the decedent had given a legacy by will and directed that the tax thereon be not deducted therefrom but be paid out of the residuary estate. That is *Page 681 
what must happen here. The administrator must pay the tax, and if he cannot collect it from the surviving partner, the residuary estate is diminished pro tanto.
Indeed, both this point, and the further contention of appellant that the assessment must be set aside because of alleged failure to bring the surviving partner into the proceeding, have both already been essentially adjudicated against appellant's position, in Bugbee v. Van Cleve, 100 N.J. Eq. 263
(at p. 269). It may be added that there is no evidence showing that the surviving partner did not, in fact, have notice of these tax proceedings; there is some evidence from which it might be inferred that he did have such actual notice.
There is, however, one particular in which it would appear that an error has been made, evidently inadvertently. The precise point was not raised by appellant, but his specification of over-valuation as ground for appeal doubtless warrants its consideration and determination.
The comptroller's appraisement of the value of the half interest in the good will is as though the transfer thereof were immediate; whereas the provisions of the partnership agreement effectuate a transfer covering a period of five years, one-fifth each year. Until the transfer is complete the decedent's next of kin enjoy the good will pro rata — sharing in the profits, if any. The half interest in the good will should therefore be appraised at the present commuted value of five annual transfers each of one-fifth thereof — and the tax assessed accordingly.
The record will be remitted for modification in this behalf. In all other respects the tax will be affirmed. *Page 682