Discordant opinions concerning the validity of an inheritance tax assessment have occasioned this appeal. R.S. 54:33-2;N.J.S.A. 54:33-2; R.S. 54:34-13; N.J.S.A. 54:34-13. *Page 437 
One Clayton L. Hagy, Jr., a resident of Atlantic County, died testate on May 17th, 1942, at the age of sixty-seven years. His widow, Ethel W. McK, Hagy, survived him, and she is the executrix and sole beneficiary of his last will and testament executed on April 6th, 1938.
Within the period from February, 1935, to January, 1936, the decedent, in conjunction with his wife, purchased ten annuity contracts in which they collectively invested ten single capital premiums totaling $192,449.77. Of this amount, the decedent supplied $119,879.26, and his wife is said to have contributed the balance, $72,570.51. Both were designated as the annuitants in each contract, under terms which required the annuity forthcoming from each agreement to be paid to Clayton L. Hagy, Jr., "if living, otherwise to" Ethel W. McK. Hagy. The aggregate investment yields an annual income of $11,400.
The Tax Commissioner, in appraising the gross estate of the decedent for inheritance tax purposes, included as an asset the difference between that portion of the purchase price of the annuity contracts contributed by the wife and the cost, as of the date of decedent's death, of annuity contracts which would provide Mrs. Hagy (then sixty-one years of age) with an equal annuity for the remainder of her life. Such cost, according to figures obtained from the same companies, would have been $191,670.87. The sum of $119,100.36 by which the replacement cost exceeded the $72,570.51 originally invested by the wife was added to the decedent's gross estate as a transfer, made without adequate consideration and intended by the decedent to take effect at his death.
The initial question projected by this appeal is whether the participation of the decedent in the purchase of the annuity agreements effectively operated to design and ultimately accomplish the equivalent of a testamentary disposition of some measure of his property to his wife. R.S. 54:34-1, c; N.J.S.A.54:34-1, c.
The origin of annuities of some type is discoverable in the distant past. 2 Encyc. Brit. (14th ed.) 1-5; 2 Encyc. Am.1-3; 2 Encyc. Social Sciences 69-71. The following *Page 438 
references are historically informative: 1 Walford, TheInsurance Cyc. 97-171; Kopf, The Early History of the Annuity;O'Donnell, History of Life Insurance. The issuance of annuity contracts by incorporated companies supervened, but the traditional type of annuity did not capture wide public favor. A multiformity of such contracts consequently evolved, including the "refund annuity" with which Vice-Ordinary Buchanan and our appellate courts were concerned in Central Hanover Bank andTrust Co. v. Martin, 129 N.J. Eq. 186; 18 Atl. Rep. 2d45; affirmed, 127 N.J. Law 468; 23 Atl. Rep. 2d 284;affirmed, 129 N.J. Law 127; 28 Atl. Rep. 2d 174; affirmed,sub nom. Central Hanover Bank and Trust Co. v. Kelly,319 U.S. 94; 87 L.Ed. 1282. Another class is available, such as the issuance of a single premium whole life insurance policy but only in conjunction with a single premium immediate life annuity, a type which recently occupied my attention in Bank of New York
v. Kelly, 135 N.J. Eq. 418. The contracts involved in the present appeal are denominated more precisely as "survivorship annuities" or "longer life annuities." See 39 Mich. Law Review856. It is of incidental interest to observe that in the field of litigation, annuity contracts have required and received more judicial consideration since the enactment of gift and inheritance tax legislation.
In 1935 the purchase of annuity contracts was advocated with the representation that, like life insurance, the proceeds would probably be exempted from inheritance taxation. That supposition was found to be erroneous. Central Hanover Bank and Trust Co.
v. Martin, supra; Bank of New York v. Kelly, supra. In the federal jurisdiction: Helvering v. LeGierse, 312 U.S. 531;Keller v. Commissioner, 312 U.S. 543. From the viewpoint of risk, the difference between a life insurance policy and an annuity contract is diametric.
The notion that a commercial annuity contract would be exempted from transfer inheritance taxation by force of the decisions in such cases as In re Kellogg, 123 N.J. Eq. 322;197 Atl. Rep. 263; In re Honeyman, 98 N.J. Eq. 638: 129 Atl. Rep. 393;affirmed, sub nom. Bugbee v. Board of Home Missions, c.,4 N.J. Mis. R. 99; 131 Atl. Rep. 924; *Page 439 affirmed, 103 N.J. Law 173; 134 Atl. Rep. 915, and FidelityUnion Trust Co. v. Martin, 118 N.J. Law 277; 192 Atl. Rep. 74;affirmed, 119 N.J. Law 425; 197 Atl. Rep. 40, has also been dispelled. Central Hanover Bank and Trust Co. v. Martin,supra.
In the present appeal, the petitioner trains attention on the following circumstances: (a) that both the decedent and his wife contributed materially to the cost of the annuity; (b) that the cost of such an annuity for the life of the decedent was, in each instance, greater than the amount contributed thereto by him; (c) that the annuities were not joint in the sense that they were payable currently to both and then to the survivor of them; (d) that the decedent did not reserve any power to cancel or alter the contracts or control the payment of a refund or the designation of a future beneficiary; and (e) that the decedent did not live to receive the annuities during the full period of his estimated life expectancy. It is asserted that in such circumstances the benefits derived from the annuities by the surviving widow accrued to her as a result of a contractual arrangement, to which she was a party and for which she paid a valuable consideration.
In the solution of these controversial issues of taxation, it is ordinarily an efficient policy to reorganize and endeavor to envisage the evident and inferential circumstances accompanying and surrounding the particular transaction. If my impression of the facts motivating the purchase of the annuities implicated in the present appeal is spurious, the responsibility must rest upon the litigant who suffers from the paucity of the proof. It is difficult to harvest rich crops from an ungenerous soil.
The time was 1935. An economic depression had descended upon us. The scene, a conference between Mr. and Mrs. Hagy. They, like others, were doubtless experiencing a feeling of uneasiness and perhaps anxiety concerning the stability and perchance the gradual evaporation of their financial resources. Like others in similar circumstances, they sought and contemplated available protective measures. Is it not plausible to infer that Mr. Hagy divulged to his wife that *Page 440 
he had gleaned knowledge of a plan by which they could place their financial house upon a rock and despite the eventual adversities that might beat upon it, it would shelter them for the duration of their lives? Yes, an annuity contract would accomplish the purpose. Likely he remarked, "For a present investment of $192,449.77, of which I shall furnish approximately sixty-two per cent., which is a very substantial portion of my estate, and you supply thirty-eight per cent., an annual income of $11,400 can be obtained for the remainder of my life." Perhaps Mrs. Hagy justifiably inquired, "You are older than I, and as much as I abhor the thought, what is to happen to me if I survive you?" Doubtless he replied, "I have anticipated that. I have bargained with that in contemplation. You will receive an annuity for the duration of your life." "When will I receive it?" she asked. "Not before but immediately after my death," he explained. "But in what amount?" "Precisely the same sum," was his answer. Her curiosity necessitated one more question. "Why is it that although I contribute only about thirty-eight per cent. of the investment, I am entitled at your death to receive an annuity equal to yours?" The answer to that question is dispositive, I think, of the first point of the present appeal. While the dialogue which I have written is imaginary, it is not fanciful to infer from the established and acknowledged facts that some such colloquy occurred.
The difficulty which the appellant encounters reposes in the inability in the present case to demonstrate that the consideration which she supplied was wholly allocable to the amounts payable to her after the death of the original annuitant. In calculating the purchase price of the contract, the company assumed that the periodical payments would continue for a period equal to the life expectancy of Mrs. Hagy, the younger of the two designated annuitants. That period fixed the relative amounts of the annuity payments and the purchase price. During how long a period of her life expectancy Mrs. Hagy would receive the payments by reason of the premature or retarded death of her husband was a matter of indifference in establishing the cost. Assuredly the decedent intended that the $119,879.26 of his *Page 441 
own estate which he deposited to the credit of the investment would in some measure produce and in a sense augment the benefits to be received and enjoyed by his wife after, and only after, his death. Certainly by virtue of his agreement something of value which had been intentionally withheld for the use of the decedent during his life passed to his wife upon the occurrence of his death. Cf. Koch v. McCutcheon, 111 N.J. Law 154;167 Atl. Rep. 752; Hasbrouck v. Martin, 120 N.J. Eq. 96; 183 Atl. Rep. 735;Hartford v. Martin, 122 N.J. Law 283, 287; 4 Atl. Rep. 2d31. From the point of view of taxability, it is immaterial whether the interest transferred is in the form of a capital refund or in the form of future annuities.
Of course, the decedent could not be certain that his wife would survive him, but he agreed, in the contracts, that should she survive him, she would receive the entire annuities from and after his death. The reality is our present concern. She did survive and has, pursuant to the deliberate intention of her husband, come into possession of pecuniary benefits which she did not previously enjoy and in an amount materially in excess of annuities which her own investment would have warranted. She has succeeded to the full amount of the annuities payable in consideration of the total cost, and her succession to such benefits has occurred as a result of the death of her husband. It is unnecessary to elaborate. The annuity contracts have had, as contemplated, the practical effect of reserving to the decedent the enjoyment of all the funds invested and postponing the transfer of the economic benefits to another until after his death. Such a method of succession of money values is taxable. The following citations are pertinent: Central Hanover Bank andTrust Co. v. Martin, supra; Commissioner of Internal Revenue
v. Wilder's Estate, 118 Fed. Rep. 2d 281; certiorari
denied, 314 U.S. 634; 62 S.Ct. 67; 86 L.Ed. 509; Commissioner ofInternal Revenue v. Clise, 122 Fed. Rep. 2d 998;certiorari denied, 62 S.Ct. 914; 86 L.Ed. 1218; Mearkle'sEstate v. Commissioner of Internal Revenue, 129 Fed. Rep.
2d 386.
The petitioner is also aggrieved by the valuation of the *Page 442 
transfer adopted by the Tax Commissioner in determining the amount of the tax. To fairly, justly, and intelligently evaluate the interest subject to taxation can be attended, as here, with some incertitude from the practical necessity of selecting one of perhaps several conceivable methods of appraisement.
The right to receive the annuities to which Mrs. Hagy succeeded as the surviving annuitant has been valued by the Commissioner at $191,670.87. From this sum he deducted $72,570.51, the amount of her contributions toward the original purchase price. He has levied the tax on the balance of $119,099.56. The valuation so determined seems to me to be inordinately excessive. The appraisal of $191,670.87 is obviously fashioned by means of the application of the so-called "replacement cost method" of valuation.
True, that method has been pursued in some cases in determining the value of certain interests subject to gift and inheritance taxes. For example, the United States Supreme Court in three recent cases resolved that the true measure of value for tax purposes of a gift of a single premium life insurance policy is, in the absence of more cogent evidence, the cost of replacing and duplicating the policy at the date of the gift. Guggenheim v.Rasquin, 312 U.S. 254; 85 L.Ed. 813; Powers v. Commissioner ofInternal Revenue, 312 U.S. 259; 85 L.Ed. 817; United States v.Ryerson, 312 U.S. 260; 85 L.Ed. 819.
In Mearkle's Estate v. Commissioner of Internal Revenue,129 Fed. Rep. 2d 386, it appeared that the widow succeeded to the complete enjoyment of the benefits of annuity contracts at the death of her husband, and that the Tax Commissioner had determined the value of the taxable interest to be the amount it would have cost to buy for the widow a similar annuity on the day of the decedent's death. The Circuit Court of Appeals recognizing that the appraisal was in obedience to the Treasury Regulation (paragraph 2 of Regulations 80 (1937), article 10 (i), since replaced by subsequent regulations) and not proved to be manifestly arbitrary and unreasonable, did not in such circumstances disapprove or disparage the use of the replacement cost method for the *Page 443 
federal estate tax purpose. See, also, United States Trust Co.
v. Higgins (United States District Court, Southern District of New York, not yet officially reported).
An examination of our laws in quest of some prescript relative to the valuation of annuities conducts us to the provisions ofR.S. 54:36-2; N.J.S.A. 54:36-2:
"In determining the value of a life estate, annuity, or estate for a term of years, the American experience table of mortality, with interest at the rate of five per cent. per annum shall be used."
The statutory instruction is unequivocal. It suggests no exceptions. The authority of the Commissioner to depart from the peremptory method of appraisal at his discretion is not observable. Witness the conclusion of the Minnesota Board of Tax Appeals in analogous circumstances in Estate of Ila M. Stewart
v. The Commissioner of Taxation, March 7th, 1944, unofficially reported in Commerce Clearing House, Inheritance, Estate andGift Tax Service (7th ed.) p. 91,197 ¶ 15,636, and inPrentice-Hall, Inheritance and Transfer Tax Service (11thed.) Minnesota Recent Decisions and Rulings, ¶ 1103.
Suppose the decedent under his will were to have bequeathed an annuity of $11,400 to his wife for life, the Commissioner undoubtedly would have measured its value for tax purposes according to the American Experience Table of Mortality with interest at five per cent. as required by R.S. 54:36-2; N.J.S.A.54:36-2. This is "done every day" as Vice-Ordinary Buchanan observed in In re Langhaar, 125 N.J. Eq. 374, 381; 5 Atl. Rep.
2d 744; affirmed, 126 N.J. Law 139; 19 Atl. Rep. 2d241. In such a situation the Commissioner does not resort to insurance company figures in fixing value, and I am unable to perceive in the evidence any rationalistic cause for the application of a different rule in the situation here presented.
In view of our statute, I confess an inability to conciliate the valuation of an annuity of $11,400 by the will of the decedent for the benefit of his wife for life at $98,660.73, its worth if calculated in accordance with the provisions of R.S.54:36-2; N.J.S.A. 54:36-2, and the valuation of an *Page 444 
annuity in the same amount under an insurance company contract
for the benefit of the widow for life at $191,670.87, its replacement cost. The benefit acquired by the widow in either case is the same. Logic would seem to require that the value of the taxable benefit passing in each case should be the same, and it is my conviction that by force of present legislation the values are required to be identical in each instance.
Again in view of the statutory mandate, it is therefore quite immaterial, for tax valuation purposes, whether insurance companies vary the interest rates on which annuity policies are issued or resort to new or revised expectancy tables for the fixing of premium rates. For inheritance tax purposes, all of these factors are resolved by the statute. Both the table for the ascertainment of the expectancy of life and the rate of interest for commutation purposes are designated by law and this statutory provision has been judicially approved. In re Vreeland, not officially reported, opinion of the Prerogative Court filed December 1st, 1939, Docket No. 5112. See, also, Ithaca TrustCo. v. United States, 279 U.S. 151.
If this method of appraisal of annuities arising from contracts issued by companies regularly engaged in the selling of such contracts is deemed inadequate, then another formula for the purpose should be prescribed by the legislature by way of amendment to R.S. 54:36-2; N.J.S.A. 54:36-2, as was done in Minnesota. See Minnesota Laws of 1943 ch. 504 § 5, and Estateof Ila M. Stewart v. The Commissioner of Taxation, supra. Our present statute exhibits no distinction, for purposes of appraisal, between an annuity arising out of a commercial contract and one arising from any other source. Parenthetically, it is to be understood, of course, that the treatment of this branch of the present appeal shall not be deemed to apply to annuity contracts which specifically provide for commutation of future payments.
Reverting to the facts of the instant case, Mrs. Hagy, on the death of decedent, was entitled to receive annuities of an aggregate annual value of $11,400 for the remainder of her life. She was then sixty-one years of age, and the American Experience Table of Mortality with five per cent. interest *Page 445 
(Wolfe's Inheritance Tax Calculations (2d ed.) Table XXI p.124), at her then age, gives the factor 8.65445 as the present value of an annuity of $1 due at the end of each year for the term of her expectancy of life, resulting in a commuted value, as of the date of decedent's death, of $98,660.73 ($11,400 x 8.65445) for the annuities to which she was entitled for life.
It might be observed that the foregoing formula would appear, at first glance, to conflict with that set forth by this court inIn re Diehl's Executor, 88 N.J. Eq. 310, 312;102 Atl. Rep. 738. In that case Vice-Ordinary Foster said that "It is clear from the provisions of section 2, that an estate for life is subject to the tax, and the value of the life estate on which the tax is assessed is determined, under the act, by multiplying the life tenant's expectancy in years by the estimated annual income; * * *." If the same method were to be used here, Mrs. Hagy's $11,400 annuity for life would have a value of $153,558 ($11,400 x 13.47, her expectancy in years at the age of sixty-one). The decree was affirmed by the Court of Errors and Appeals (89 N.J. Eq. 209; 103 Atl. Rep. 822), but I do not consider the decision or its affirmance authoritative in the present controversy. In the first place, the portion of the opinion previously quoted is noticeably dicta, since the true issue did not implicate the correctness of the state's valuation of the life estate involved or of the amount of inheritance tax chargeable thereon, but simply whether the tax as charged was to be paid by the executor out of income accruing to the life tenant or out of corpus. Moreover, the Vice-Ordinary at the outset of his opinion stated: "It is admitted that the value of the life estate was properly ascertained and that the correct amount of the tax was assessed and paid." Incidentally, it is ascertained that the state valued the life estate, not according to the method outlined by the Vice-Ordinary, but according to the American Experience Table of Mortality with interest at five per cent. Finally, it clearly appears that the Vice-Ordinary's formula fails to give any consideration to present worth or commuted value. Wolfe's Inheritance Tax Calculations, supra (atpp. 13 and 14). *Page 446 
And so, the commuted value to the death of decedent of Mrs. Hagy's annuity for life is $98,660.73. That is the value of the transfers to her under agreements which were intended and which did in fact take effect in possession and enjoyment at and after the decedent's death. But there exists in the instant proceeding the fact that the surviving annuitant made a contribution to the original cost of the contracts. The legislature intended to tax only transfers of a donative nature. In re Huggins, 96 N.J. Eq. 275,281, 282; 125 Atl. Rep. 27; affirmed, sub nom. Fairleigh v.Bugbee, 3 N.J. Mis. R. 1072; 130 Atl. Rep. 923;103 N.J. Law 182; 134 Atl. Rep. 917. Consideration for a transfer actually supplied by the donee must be deducted since the transfer may be taxed only to the extent that it is a gift. In re Deutz,105 N.J. Eq. 671, 677; 149 Atl. Rep. 257; In re Huggins, supra; In rePerry, 111 N.J. Eq. 176, 182; 162 Atl. Rep. 146; In re Hollander,123 N.J. Eq. 52, 58; 195 Atl. Rep. 805; Fidelity Union Trust Co.
v. Martin, 118 N.J. Law 277, 288, 289; 192 Atl. Rep. 74;affirmed, 119 N.J. Law 425; 197 Atl. Rep. 40; 119 N.J. Law 426;197 Atl. Rep. 41.
It has been stipulated that Mrs. Hagy contributed $72,570.51 of the total purchase price of $192,449.77 paid for the several anuity contracts. Accordingly, in my judgment the Commissioner should deduct from the appraised value of the annuities ($98,660.73) the sum of $72,570.51 contributed by Mrs. Hagy and an additional sum as a reasonable return on her investments from the dates of her investments to the date of death of decedent. The designation of the proper criterion to be employed for determining the "value" of taxable transfers is one of law.Powers v. Commissioner of Internal Revenue, supra.
The assessment is remanded for correction in accordance with these conclusions. *Page 447