[No. 2669.   Nov. 29, 1922.]

## BARNETT v. WEDGEWOOD

### SYLLABUS BY THE COURT

(1)   The equitable assignee of a chattel mortgage may maintain in his own name an action for the conversion of the property covered by the mortage.                    P. 314.

(2)   Section 589, Code 1915, requiring assignments of choses in action to be in writing, has no application, where the assignment is effectuated by means of an equitable doctrine to the effect that the assignment of the debt carries with it the security.                    P. 316.

(3)   Section 591, Code 1915, requiring a demand before action, has no application, where the time for performance is fixed in the contract.                    P. 316.

(4)   An assignment of a chattel mortgage need not be recorded.                    P. 316.

(5)   In the absence of evidence to the contrary, property acquired during marriage is presumed to be community property, and the fact that cattle are branded in the recorded brand of the wife does not, standing alone, overcome this presumption.                    P. 317.

(6)   The purchase of mortgaged cattle by a third party, and the claiming of them as his own, free from the mortgage, is a conversion thereof, and no demand prior to an action for conversion is required.                    P. 318

Appeal from District Court, Sierra County; Owen, Judge.

Action by J. Barnett against Tom Wedgewood. From a judgment for plaintiff, defendant appeals.   Affirmed.

Edward D. Tittmann, of El Paso, Tex., for appellant.

M. C. Spicer, of Socorro, for appellee.

### OPINION OF THE COURT

PARKER, C. J.   The appellee brought   an   action against the appellant for the conversion of a certain number of cattle upon which the appellee claimed to have a chattel mortgage; his rights being based upon the same and having been executed by H. D. Sibley to J. N. Kenny to secure the payment of a promissory note for $252.50, executed by the said Sibley to the said Kenny, and payable on or before September 3, 1919,

with interest, and which note and mortgage were alleged to have been assigned to the plaintiff for value. The appellant answered, denying the special interest of the appellee under the chattel mortgage, and alleged that on the 28th day of March, 1919, he purchased the cattle in question from one Judith Sibley, and received a duly acknowledged bill of sale for the cattle.

It appears from the transcript that the said H. D. Sibley and Judith Sibley were husband and wife during all of the times material to the controversy; that Judith Sibley, in September, 1916, recorded the S I B brand with the State Cattle Sanitary Board, using her married name of Mrs. H. D. Sibley, and that the cattle in question were branded with this brand; that on September 28, 1919, the said H. D. Sibley entered into a partido contract with the said Kenny covering these S I B cattle and other cattle; that a controversy arose between the parties to that contract, which was compromised and settled by the giving of the note and chattel mortgage heretofore referred to; that thereafter a suit was brought by the said Sibley and wife against the said Kenny to set aside and cancel the said note and chattel mortgage on the ground of fraud and for the recovery of damages; that this suit was afterwards compromised and settled and the chattel mortgage released by the said Kenny, notwithstanding he had theretofore indorsed in blank the said note and delivered the same, together with the said chattel mortgage, for value to the appellee, and without his knowledge or consent; that on March 28, 1919, the said Judith Sibley executed a bill of sale to the appellant for the cattle in question for the sum of $534; that a sufficient sum to pay off the mortgage was placed in escrow in the Sierra County Bank to await the determination of the suit to cancel the note and mortgage; but for some reason the appellant afterwards released the money from the escrow, and it was paid over to the Sibleys. A trial was had before the court without a jury, which resulted in a judgment in favor of the appellee, for the sum of $282,

the amount due on the note, together with interest and costs, from which judgment this appeal was prosecuted.

[1]     Counsel for appellant first argues that under the circumstances shown in this case the appellee had no cause of action for conversion. He relies upon the fact that there was no written assignment of the chattel mortgage to the appellee, the assignment being an equitable assignment and effectuated only by means of the fact that the note for which the chattel mortgage was given as security was indorsed and delivered to the appellee. He cites Jones on Chattel Mortgages (5th Ed.) § 503, which is as follows:

"The mortgagee's legal interest does not, however, pass by his assignment of the debt. Such assignee cannot maintain replevin in his own name for the mortgaged property; though he may, in the absence of any express or implied stipulation to the contrary, bring such an action in the name of the mortgagee, who holds, in such case, the legal title in trust for such assignee's benefit. In like manner such assignee cannot maintain trover for a conversion of the mortgaged property, but may maintain such action in the name of the mortgagee."

This statement of the law is undoubtedly correct as announced in many of the states. See Ramsdell v. Tewksbury, 73 Me. 197; Perry County Bank v. Rankin, 73 Ark. 589, 84 S. W. 725, 86 S. W. 279. On the other hand, under statutes like ours (section 4069, Code 1915), which requires that every action shall be presented in the name of the real party in interest, it is held that an equitable assignee of a chose in action may bring an action in his own name to enforce his rights under the chose in action. Thus in 5 C. J. Assignments, § 198, it is said:

"It is well settled that an assignment which divests the assignor of both the legal and equitable title deprives him of the right to sue. Where the assignment operates to transfer only the equitable title, and the legal title remains in the assignor, it has been held by some authorities that he may maintain the suit, and that the assignee may not sue. But by the weight of authority, the assignee, as the beneficial owner, is regarded as the real party in interest, and therefore as possessing the sole right to sue, whether his title is legal or equitable."

Mr. Pomeroy states the proposition as follows:

"The rule deduced from these authorities is plain and imperative: The assignee need not be the legal owner of the thing in action; if the legal owner, he must of course bring the action; but, if the assignee's right or ownership is for any reason or in any manner equitable, he is still the proper plaintiff, in most of the states the only plaintiff, although, in a few, the assignor should be joined as a plaintiff or as a defendant. The plain intent of the statute is to extend the equity doctrine and rule to all cases." Pomeroy's Code Rem. § 65.

Special application of this principle is made in First National Bank of Mexico v. Ragsdale, 158 Mo. 668, 59 S. W. 987, 81 Am. St. Rep. 332. In that case the court quotes, with approval and adopts the language in an opinion by Philips, P. J., in Kingsland & Ferguson Mfg. Co. v. Chrisman, 28 Mo. App. 308, as follows:

"The spirit and object of the statute will be best expressed and executed by allowing this plaintiff to proceed in his own name immediately, to enforce his possessory right under the mortgage, rather than to compel him either to resort to the circumlocution of a bill in equity to compel an assignment of the legal title, or to bring replevin in the name of the mortgagee."

See, also, Willison v. Smith, 52 Mo. App. 133.

We are aware that there is some diversity of opinion as to whether an assignee of a mortgage, under the circumstances in this case, can maintain an action for conversion in his own name. The objection to the right to so maintain the action is founded upon a distinction between the common law and equitable remedies and jurisdiction. It is said that the assignment of the debt does not transfer the legal title to the mortgage, and that therefore the action must be brought in the name of the original mortgagee. This is entirely logical and correct, in the absence of the statute requiring an action to be brought in the name of the real party in interest. We deem the comment of Pomeroy, above quoted, as sound, and that it was the intention of the statute to allow and require the plaintiff, even when his rights to a chose in action arise out of an equitable doctrine, to nevertheless institute and maintain the action in his own name.

[2] Counsel for appellant seeks to draw the ·inference from section 589, Code 1915, that an assignment of a chose in action, like a chattel mortgage, can only be effectuated by a writing as provided in the section. An examination of this statute,· however, discloses that it has no application to a case of this kind. The section applies in terms to the assignment of the evidence of the debt. In this case the evidence of the debt, viz. the note, was assigned by indorsement. Assignment of the chattel mortgage was effectuated by the operation of an equitable doctrine, and which arises as a matter of law rather than by the act of the parties.

[3] Counsel for appellant predicates his claim that a demand was necessary before action could be brought upon section 591, Code 1915, but the same has no application here. That section required demand only when the time for performance is not fixed in the contract. Here the time for performance is fixed by the note.

[4] Counsel for appellant argues that there was no validity in the chattel mortgage in favor of the appellee as against the appellant, because there was no written assignment of the mortgage and no record made of any assignment. He relies upon section 7 of chapter 71 of the Laws of 1915. This section requires the filing by the mortgagee, his assignee, or personal representative, òf a satisfaction of the mortgage, duly acknowledged, and provides certain penalties for the refusal upon demand to do so. While the section contemplates that assignments of mortgages may be recorded by assignees thereof, and that said assignees may satisfy said mortgages of record, there is no requirement in the section that the assignment shall be recorded. No invalidity of the rights of the assignee, therefore, can be predicated upon the failure to assign in writing the said mortgage and to record the assignment. Under a similar statute in Kansas the Supreme Court of the United States on appeal has held that the Kansas statute did not require the filing of the

assignment of the chattel mortgage, and that failure so to do did not disturb the right of priority of the lien in the hands of the assignee of the mortgagee. See National Live Stock Co. v. First National Bank, 203 U. S. 296, 27 Sup. Ct. 79, 51 L. Ed. 192. And the general rule is that in the absence of a statute expressly or by necessary implication requiring it, assignments of chattel mortgages need not be recorded or filed to protect the rights of the assignee. 11 C. J. Chattel Mortgages, § 415. Chapter 74, Laws 1917, amending section 2 of chapter 71, Laws 1915, while making it peremptory to file or record chattel mortgages, and in the absence of such record provides that the same are void as to subsequent mortgagees in good faith, purchasers for value without notice, and others, there is no requirement in the section that an assignment of a mortgage need be recorded in order to protect the assignee's right thereunder. It follows that the proposition put forward by counsel for appellant is not well founded.

[5] Counsel for appellant argues that there is no sufficient evidence in this case of the right of H. D. Sibley to mortgage the cattle in question. As before pointed out, these cattle were branded in the recorded brand of Mrs. H. D. Sibley. But it appears that the cattle were acquired during the existence of the marriage between the two Sibleys. In the absence of evidence to the contrary, the presumption, therefore, is that the cattle were community property. This presumption, in the absence of evidence to the contrary, becomes absolute and conclusive, but is rebuttable and will yield to satisfactory evidence that the property is the separate property of either spouse. 5 R. C. L. Community Property, § 25. There is no evidence in this case overcoming this presumption. It is true that these cattle were branded in the recorded brand of the wife. Section 117, Code 1915, requires that every person owning animals of this class, which are allowed to range at large, shall have and adopt a mark and brand for such animals. This recorded brand under section 122, Code

1915, is sufficient to identify animals of this class, and is sufficient prima facie proof that the person owning the recorded brand is the owner of the animal branded with such brand in criminal prosecutions for the larceny of such animals. Section 2764, Code 1915, provides that all property acquired after marriage by either husband or wife or both shall be community property unless the same was acquired by gift, bequest, devise, or descent. By chapter 84 Laws 1915, the husband has the management and control of the personal property of the community, and during coverture has the same power of disposition of the same, other than testamentary, as he has of his separate estate. By section 2764, Code 1915, it is further provided that when any property is conveyed to a married woman by an instrument in writing, the presumption is that title is thereby vested in her as her separate property. Is the presumption that this property is community property overcome by the fact that these animals were branded in the recorded brand of the wife? We think not. The section has reference to instruments of transfer and conveyance of property, and makes no provision whereby the same effect can be attributed to the recording of brands. If these cattle were community property, as they appear to be, the husband, under the provisions of the statute heretofore referred to had full power to make, execute, and deliver the chattel mortgage in question without the consent or knowledge of the wife. There is no showing in the case that the title to the cattle was ever acquired by the wife by means of any conveyance to her. Neither of the Sibleys testified in this case, and this may account for the meager amount of proof on this subject. But it seems clear that the presumption as to the property being community property is nowhere overcome by any substantial proof.

[6] Counsel for appellant argues that there is no sufficient evidence of the conversion of the property, but in this he is in error. The facts are that the appellant bought these cattle from Mrs. Sibley, purport-

ing and intending to take absolute title to the same, and that he had notice at that time of the existence of the mortgage, and that it was outstanding. He made provision in the contract accompanying the sale to him that sufficient money should be retained in escrow until the validity of the mortgage should be determined. For some reason thereafter, which is not explained in the transcript, he consented that the money be turned over to the Sibleys, and he necessarily thereupon claimed the property absolutely, free and discharged of the mortgage lien. This amounted to a conversion of the property on his part and entitled the plaintiff to proceed without demand. 26 R. C. L. Trover, §§ 33-35.

It may be said generally that it appears that the appellant was imposed upon by either Kenny or the Sibleys, in that they induced him to surrender his money, which had been placed in escrow to take care of this note and mortgage. He has, however, only himself to blame for the situation in which he is found to be, and he has no legal complaint of the judgment rendered in the case.

It follows from all the foregoing that the judgment of the district court was correct, and should be affirmed; and it is so ordered.

BARNES, J., concurs.