**WILSON et al. v. UNITED STATES.**

**No. 8875.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 23, 1938.

Joseph C. Meyerstein, of San Francisco, Cal., for appellants.

James W. Morris, Asst. U. S. Atty. Gen., Sewall Key, J. Louis Monarch, Morton K. Rothschild, and Louise Foster, Sp. Assts. to the Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for the United States.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The court below decreed that funds transferred by a decedent to appellants constituted a trust fund for the payment of debts owing by decedent including the amounts decedent owed for income taxes, and rendered judgment against appellants for the amount of the taxes.

On March 12, 1919, Henry Wilson, the decedent, filed his income tax return for the year 1918, and paid the tax shown on the return. On March 15, 1920, decedent filed his income tax return for the calendar year 1919, and paid the tax shown on the return. On September 4, 1925, the Commissioner of Internal Revenue, after decedent had executed waivers extending the time for assessment, gave decedent notice of a deficiency for the year 1918 in the sum of $6,591.52, and for the year 1919 in the sum of $2,596.80. On October 26, 1925, decedent petitioned the Board of Tax Appeals for a redetermination of the deficiencies.

On June 1, 1928, decedent, being then over 79 years old, and contemplating his death, transferred to his wife, Mary H. Wilson, and to his son, Francis A. Wilson, a savings account, the principal and interest of which amounted to $430,737.73. On June 5, 1928, decedent died. Subsequently, the wife and son divided the funds they had received, after paying the expenses of decedent's last illness in the sum of $361.25, the expenses of his funeral and interment in the sum of $4,024.15, and after making a gift to charity. The wife received $270,727.68, and the son and Winfred T. Wilson, another son, each received $67,681.92.

On November 6, 1928, the Board redetermined the deficiencies in tax paid by decedent in the sum of $4,006.61 and $775.74 interest for the year 1918, and in the sum of $1,725.39 and $334.06 interest for the year 1919. Review of the Board's decision, entered pursuant to the redetermination was not sought, and the decision became final on May 18, 1929.

On December 26, 1934, appellee filed in the court below a bill against the wife and the two sons, hereinafter referred to as appellants, alleging the tax indebtedness of decedent, the transfer of funds, that the transfer "operated as a fraud" on appellee because it left decedent "without property" and with "no estate", and that the property transferred to, and received by, appellants was "impressed with a trust in equity for the benefit" of appellee.

The trial court found, in addition to the facts related above, that at the time of the transfer decedent owed the following:

| | |
|---|---|
| Expenses of last illness .........$ | 361.25 |
| Income taxes for years 1918, 1919 ...................... | 6,841.80 |
| Income taxes for years 1921–1924 ...................... | 13,102.01 |
| Total ....................$20,305.06 | |

It also found the funeral expenses to be $4,042.15, which, with the above total, makes a grand total of $24,346.21. The court below also found that the only asset in which decedent had an interest at the time of the transfer was a home, which was owned by decedent and his wife as joint tenants with right of survivorship; that the fair market value of the residence was $45,000; that the fair market value of the interest of one joint tenant did not

equal $22,500; and that the total of decedent's debts "at the time of his transfer of said bank account exceeded the fair market value of his interest as joint tenant in said residence."

The trial court concluded that the transfer of the bank account was fraudulent as to creditors; that decedent was "rendered insolvent by said transfer" and that the money received by appellants was impressed with a trust for the benefit of creditors. Decree was entered to the effect that the money received by appellants from decedent "constituted a trust fund for the payment of debts owed by said [decedent], including debts owed to the United States", and judgment was rendered in favor of appellee against appellants for the amount of the deficiencies in the taxes for the years 1918 and 1919, with interest. Appellants have appealed from that decree.

■ Appellants contend that there is no evidence whatever to support the finding that decedent was rendered insolvent by the transfer of the bank account. This contention is based on three arguments. The first is that the sole evidence shows the value of the residence to be $45,000, and therefore decedent's interest therein had a value of $22,500; that funeral expenses of decedent, which were $4,042.15, were not incurred at the time of the transfer, and were not a debt owing by decedent, and therefore his debts were only $20,305.06, and thus decedent was not insolvent at the time of the transfer. The difficulty with this argument is that although all the interests in the residence were worth $45,000 there is nothing to show that decedent's interest was worth $22,500. We think it is apparent that a purchaser of a joint tenant's interest would not pay as much, in comparison with what he would pay for the entire interest.

■ The second argument is that decedent had another asset consisting of a drawing account which should be added to his interest in the residence. The testimony of one of decedent's sons, Francis A. Wilson, is the only testimony contained in the record. On direct examination he testified:

" * * * At the date of his death he [decedent] owned the residence * * * in joint tenancy with my mother. That was all that he owned. I do not recall other interests of any kind or sort whatever * * *

" * * * He was not interested in the lumber business at the time of his death except in so far as he acted as a sort of adviser for Wilson Bros. and Company and drew a salary from the Company * * *"

On cross-examination he testified: " * * * My father acted in an advisory capacity to Wilson Bros. Company and had a drawing account for his services. For 1927 the drawing account was $12,000.00. It had not been fixed in 1928, but he did have a drawing account of $12,000 a year * * *"

If the foregoing evidence is sufficient to show that decedent was entitled to $12,000 a year, a fact which is by no means clear, there is nothing to show that decedent had not been paid whatever was due him. Appellee, having the burden, as appellants contend, to show insolvency, presented evidence to that effect. The contrary evidence offered by appellants concerning the drawing account, did not specifically show that there was due decedent any sum, and therefore appellee carried its burden.

Finally, appellants contend that the entire value of the residence must be taken into consideration in determining whether or not appellant was insolvent at the time of the transfer. The argument is based upon the rule that "as against creditors, where the property taken in joint tenancy by husband and wife is community property, the whole of it, not a half, is liable for the husband's debts". While it is true that creditors may show that property, taken by husband and wife as joint tenants, was actually community property (Hulse v. Lawson, 212 Cal. 614, 299 P. 525), it is doubtful whether decedent's wife could do so. Siberell v. Siberell, 214 Cal. 767, 773, 7 P.2d 1003. However, there appears to be no reason why the two sons could not make such a showing, and we consider the contention on the assumption that they could do so.

■ Did the evidence disclose that the property was community property? There was introduced in evidence an answer of the wife and one son, to a petition of an official of the State of California, filed in a state court seeking determination of the inheritance tax due in connection with decedent's estate. There was also admitted in evidence a claim for refund filed by appellants, regarding the federal estate tax paid in connection with decedent's estate.

In each of these documents there was a statement that the residence was purchased with community funds. An affidavit executed by one of the sons, and used in connection with the claim for refund contained a similar statement.

At the trial there was one witness only —one of the sons. On direct examination he testified: "At the date of his death he [decedent] owned the residence * * * in joint tenancy with my mother." On cross-examination he testified: "The real property in Piedmont which was held in joint tenancy had been purchased with community funds." The deed conveyed the residence to decedent and wife "as joint tenants and not as tenants in common". The habendum clause in the deed contained the identical quotation.

The declarations in the documents mentioned, and on cross-examination, make no attempt to disclose the "mode of acquisition" of the property which was asserted to be "community" property and used to purchase the residence. Such declarations fall within the rule stated in Bias v. Reed, 169 Cal. 33, 42, 145 P. 516, 519, that "the character of the ownership of property, whether separate or community, is to be determined by the proof showing the mode of acquisition, rather than by any declaration of one of the parties that the property was or was not community property." See, also, Potter v. Smith, 48 Cal.App. 162, 191 P. 1023, 1025; In re Allan's Estate, Cal.App., 82 P.2d 190, 193.

In these circumstances, the following quotation from Chamberlain v. Chamberlain, 2 Cal.App.2d 684, 687, 38 P.2d 790, 791, is pertinent: " * * * Appellant's testimony was introduced to rebut the legal effect of the documentary evidence produced by plaintiff. However, the trial court was not obliged to accept the explanation offered by appellant and to decide that it overcame the legal effect of the deeds and of the agreement for the sale of the property. Respondent's documentary evidence created a presumption that the legal title to the property was in respondent and appellant as joint tenants in accordance with the plain language of the deeds. Appellant sought to overcome this presumption by the testimony which he himself offered. It remained for the trier of facts to decide whether the proof offered by appellant was sufficient to overthrow the presumption. * * * It is obvious that the principle which is here applicable is the very common principle which requires that a finding of a trial court attacked for lack of evidentiary support must be upheld if the evidence respecting the facts specified in the finding is conflicting. * * *"

We think the trial court's finding that decedent and his wife owned the property "as joint tenants with the right of survivorship" is not clearly erroneous.

Affirmed.