346 P.2d 1030

### Ola CONLEY, Plaintiff-Appellant,

v.

Wesley QUINN, Executor of the Estate of A. J. Conley, Deceased, A. O. Conley, Roy Luther Conley, Millard Everett Conley, Bertha Marie Conley Barnhart, Unknown heirs of A. J. Conley, Deceased, and all unknown persons claiming any lien, interest or title in the premises adverse to plaintiff, Defendants-Appellees.

No. 6502.

Supreme Court of New Mexico.

Sept. 1, 1959.

Rehearing Denied Nov. 17, 1959.

Blythe & Norvell, Clovis, for appellant.

Wesley Quinn, Clovis, for appellees.

LUJAN, Chief Justice.

In this suit plaintiff-appellant, Ola Conley, seeks to quiet title to a community interest which she asserts in two parcels of real estate, to establish a community interest in certain personal property, and to establish her separate ownership of a few items of personalty.

The real property in question consists of the "Yeakley" tract and the "Austin" tract. The Yeakley property is a 160-acre tract in Curry County in which appellant asserts an undivided six-tenths interest, her alleged community interest plus a one-fifth interest in the remainder left her under the will of A. J. Conley. The Austin property is a 640-acre tract in Quay County in which appellant asserts an undivided one-half community interest.

The personal property in question consists of ten promissory notes in principal

sums totalling $6,925, cash in the bank in the amount of $2,100, an automobile and trailer, and certain household furnishings. Appellant also seeks a community half-interest in $6,000 expended to improve the separate property of A. J. Conley.

A. J. Conley and Ola Conley were married August 18, 1939, when Mr. Conley was 71 years of age and Ola Conley, the appellant, was 43 years of age. Prior to this date A. J. Conley had suffered a stroke and was not in the best of health.

At the time of his marriage to Ola Conley, A. J. Conley was the lessee of real property which the parties have referred to as the "school section." This lease was renewed twice during the marriage and was relinquished in 1947 for $10,000 plus $100 interest.

At the time of his marriage to appellant, A. J. Conley also owned the "Acker" tract, a half-section of land in Curry County which he sold shortly after marriage for $4,800.

The Austin tract was acquired a short time after the marriage from two separate individuals, Austin and Robertson. A down payment of $1,382 was made to Austin. The land was put in a Federal Land Bank loan and enough was obtained on this mortgage, signed by both A. J. Conley and Ola Conley, to pay Robertson in full. Austin was paid in full from the proceeds of the sale of the school section.

The Yeakley tract was purchased in December of 1943 for $4,500 with $2,000 paid in cash and $2,500 raised through a Federal Land Bank mortgage which both A. J. Conley and Ola Conley signed.

In addition to the facts set forth above, the trial court made numerous findings of fact which we shall paraphrase. That after the marriage of A. J. Conley and Ola Conley, their subsistence was derived in small part from a few cattle, chickens, and hogs, with the remainder coming from rentals of A. J. Conley's farms. That in 1947 A. J. Conley sold the school section lease which he owned at the time of the marriage for $10,000, and used $6,000 of this amount to improve certain of his separate property. That Ola Conley always treated the property she owned at the time of marriage as her separate property, and maintained her own bank account. That during the marriage, the monies and bank accounts of each spouse were kept and maintained separate and distinct from each other. That during the marriage, neither spouse performed actual physical labor in the planting, cultivation, or harvesting the crops, and that the income from the real property acquired after marriage was produced by hired labor or by tenants farming on a share basis. That the rental paid to the State on the school section was paid from the separate funds of A. J. Conley. That A. J. Conley rented the school section on a crop rental basis and the amounts received were the

separate property of A. J. Conley. That the Yeakley tract and Austin tract were purchased with the separate funds of A. J. Conley. That during the marriage, Ola Conley and A. J. Conley traded and sold small numbers of hogs, cows, and chickens, and that the proceeds from these sales were very small and were divided between A. J. Conley and Ola Conley.

Based on these findings, the court concluded that no community property existed.

■ Since appellant relies heavily on the presumption that property acquired after marriage is community property, it must be kept in mind that this presumption is rebutted when, as in this case, the separate character of the property in question is proved by a preponderance of the evidence in the trial court. Campbell v. Campbell, 62 N.M. 330, 310 P.2d 266.

The school section lease is an item of property which is vital in the determination of this appeal. As appellant states, "The School Section was leased by decedent from the State of New Mexico under four successive five-year leases, the last two of which were executed during the marriage, and the last of which was relinquished for a consideration of $10,000, which both parties concede was the source of funds with which a large portion of the property involved herein was acquired, the question being whether the lease was community or separate estate."

Appellant contends that the court erred in holding that the school section lease remained the separate property of A. J. Conley, and that there is no substantial evidence to support the court's finding that the lease rentals were paid from the husband's separate funds.

■ We believe the trial court was correct in holding that this lease remained the separate property of the deceased, A. J. Conley. Each renewal of the school section lease, two of which occurred after the marriage of A. J. Conley and Ola Conley, created a new estate. Accordingly the lease was presumptively community property and the burden was on the appellee to prove the separate character of the property by a preponderance of the evidence. Campbell v. Campbell, supra. We believe that appellee sustained this burden by proving that the lease rentals were paid from the separate funds of A. J. Conley.

Appellant urges that "there was no substantial evidence to support the court's holding that the two tracts of land involved in these actions were acquired with separate funds." We do not agree with this contention.

■ The Austin tract was acquired some four or five months after the marriage of A. J. Conley to appellant. It clearly appears that Mr. Conley was not gainfully employed in a trade, profession, or otherwise, not an unusual fact in view of his advanced

age. There is simply no evidence to indicate that during this four-month period any community property was acquired. It necessarily follows that the down payment came from the separate funds of A. J. Conley. Appellant recognizes that this tract was paid off by 1948 with a part of the proceeds from the sale of the school section. We have already determined that the school section lease was the separate property of A. J. Conley. And property acquired after marriage in exchange for or with the proceeds from property owned before marriage remains separate property. Morris v. Waring, 22 N.M. 175, 159 P. 1002; Roberts v. Roberts, 35 N.M. 593, 4 P.2d 920. Thus the trial court correctly held that the Austin tract was the separate property of A. J. Conley.

It should also be noted at this point that $6,000 of the proceeds from the sale of the school section were used to improve what is admitted to have been A. J. Conley's separate property. This was then simply the use of separate property to improve separate property.

Much of what we have said regarding the Austin tract is equally applicable to the Yeakley tract purchased some four years after the marriage. Again there is no evidence of any community property having been acquired during this period. Appellant testified that the $2,000 down payment on this tract came $1,600 from a broomcorn crop raised on the school section and $400 from A. J. Conley's bank account, and that they finished paying for this tract out of the proceeds of the sale of the school section. As previously stated, the school section was the separate property of A. J. Conley and property acquired in exchange for this lease also took the status of separate property. Morris v. Waring, supra.

The broomcorn crop raised by hired labor on the school section was a part of the "rents, issues and profits" of separate property, and under the mandate of Section 57-3-5, supra, was separate property.

"Rents, issues and profits" have been dealt with in some detail by this court, particularly in the case of Laughlin v. Laughlin [49 N.M. 20, 155 P.2d 1010]. The rents, issues and profits of separate property remain separate property even when the property has been improved or managed through community activity. But the portion of the increase due to the activity of one or both of the spouses is community property. Laughlin v. Laughlin, supra; Campbell v. Campbell, supra; Katson v. Katson, 43 N.M. 214, 89 P.2d 524; Galloway v. White, 64 N.M. 470, 330 P.2d 553; Clark, Community of Property p. 19 (1956).

In the usual case the husband is active in cultivating and/or managing such farming land as he may own. When that state of facts exists, an apportionment is called for. McElyea v. McElyea [49 N.M.

322, 163 P.2d 635]; Laughlin v. Laughlin, supra. In the instant case it does not appear that either A. J. Conley or Ola Conley took an active part in managing Mr. Conley's various farms, and there is ample evidence to support the trial court's finding that during the entire period of marriage neither spouse "performed actual physical labor in the planting, cultivation, or harvesting of crops, and that the income from the real property acquired after marriage was produced by hired labor or by tenants farming on a share basis." The fact that hired labor was occasionally used does not in and of itself establish that either spouse expended any labor, skill, or industry upon A. J. Conley's separately owned property. See Campbell v. Campbell, supra.

The following statement by the court in In re Barnes' Estate, 128 Cal.App. 489, 17 P.2d 1046, 1047, 1048, seems appropriate in this case:

"In the case at bar, the facts disclosed but little, if any, application of labor on the part of the deceased to the farming land owned by him as a part of his separate estate * * *."

Appellant contends there was no substantial evidence to support the trial court's holding that all property listed in the amended inventory of the A. J. Conley Estate, including a large number of items of personalty, was the separate property of A. J. Conley at the time of his death.

Since there is substantial evidence in the record that the only sources of income, with the possible exception of very small sums received from the sale of livestock and chickens, were from the sale of separate property, rentals received from separate property, interest on loans of separate property, and other rents, issues, and profits of separate property, the court was justified in concluding that all the property listed in the amended inventory was the separate property of A. J. Conley.

The major item of personalty was promissory notes in the principal sum of $6,925. Interest received on loans of separate property is separate property. Morris v. Waring, supra. In Laughlin v. Laughlin, supra, 49 N.M. at page 34, 155 P.2d at page 1018, this court quoted extensively from an article by Professor Pomeroy, a portion of which is as follows:

"The 'rents, issues, and profits' of the separate estate, which are intended by the code to remain separate property, should be confined to those proceeds which arise, without the husband's *active* use of the separate property, as a capital, in carrying on some business, trade, or profession, and, therefore without the husband's *direct* labor as the agency or means for their production. Familiar illustrations are the rents, arising from lands belonging to his separate estate, which have been

leased; the dividends, and other such income, which arise from funds belonging to his separate estate, which are invested in stocks, government bonds, and other like securities; interest arising from monies loaned upon notes, mortgages, and the like, and all similar forms of income and profits, which do not result from the husband's labor, directly expended in producing them."

Appellant's contention that "there was no substantial evidence to support the court's finding that during the marriage A. J. Conley maintained a separate bank account, and the court erred in refusing to find that separate and community funds were commingled therein" is without merit.

There was certainly substantial evidence, particularly the testimony of Mrs. Barnhart, to the effect that A. J. Conley and Ola Conley kept and maintained their properties separate, including their bank accounts. Of course, this fact alone would not establish that all monies deposited in A. J. Conley's separate account were his separate property. Roberts v. Roberts, 35 N.M. 593, 4 P.2d 920. As previously pointed out, however, there was substantial evidence that all of the real estate involved herein, as well as the personal property listed in the amended inventory, was the separate property of A. J. Conley. This being the case, there was little or no community property to be commingled. It is unnecessary to consider certain other points raised by appellant which are also contingent upon the presence of more than token amounts of community property. It should be noted at this point that appellant too separately owned certain real estate from which she collected rents.

■ Appellant contends that the court erred in dismissing her suits for an accounting. These suits prayed that the appellee be required to account to her for an undivided half-interest in and to the rents, issues, and profits of the Austin tract and that she be adjudged the owner of an undivided six-tenths interest in the rents, issues, and profits of the Yeakley tract as well as in the personal property. The court determined, correctly we believe, that all of the above-mentioned property was the separate estate of A. J. Conley. With this determination, the need for an accounting vanished.

■ Appellant takes the position that after the court concluded that all the personal property involved herein was the separate property of A. J. Conley, it failed to dispose of it in the judgment and this constituted reversible error. We think not. It was in appellant's suit for an accounting that she sought to have the personal property adjudged to be community property. The trial court, having concluded that all of the personal property involved in this litigation was the separate prop-

erty of A. J. Conley, simply dismissed the suit for an accounting. This action had the same effect as stating in the judgment that appellant take nothing in her suits for an accounting.

Appellant contends "there was not substantial evidence to support the Court's findings (1) that the subsistence of A. J. Conley and Ola Conley was derived in small parts from a few cattle, chickens and hogs and the remainder was supplied from rentals from A. J. Conley's farms and (2) that Ola Conley and A. J. Conley, during their marriage, traded for and sold small numbers of hogs, cows and chickens, and the proceeds from these sales were very small and were divided between A. J. Conley and Ola Conley, and said findings were inconsistent."

■ There was ample evidence to support the finding that the subsistence of the Conleys was derived in small parts from a few cattle, chickens and hogs with the remainder supplied from rentals of A. J. Conley's farms. Mrs. Barnhart testified that the most cattle they ever had at one time was six; that one year the Conleys had fifteen or twenty hogs and the rest of the time only one or two. Both Mrs. Barnhart and appellant testified that some chickens were raised each year. Appellant further testified that from two to twenty hogs were raised every year with two being butchered each year; that the most

cattle (cows and calves) the parties ever had at one time was eight and that generally they had only one to four.

It is patent that raising hogs, cattle and chickens on such a minor scale could hardly have furnished more than a token amount of the family's total subsistence.

The court's finding that the parties sold small numbers of hogs, cows and chickens, and that the proceeds from these sales were very small was clearly supported by substantial evidence, including certain testimony of the appellant. She testified that such sales were made and that the proceeds of these sales were used partly for gasoline and spending money with the remainder being deposited in A. J. Conley's bank account.

■ On the other hand, the court found that the remainder from the proceeds of these sales were divided between the parties. This particular finding, as urged by appellant, is not supported by substantial evidence. Appellant's uncontradicted testimony is to the effect that the remainder was deposited in A. J. Conley's bank account.

■ Appellant attempts to utilize this error, which happens to be minor under the facts of this case, to establish a community interest in *all* of the property involved herein on the theory of commingling. These small proceeds were community property and, as appellant contends, the general

rule is to the effect that when separate property has been so intermingled with community property that the separate property cannot be traced or identified, it falls under the presumption of community property. Stroope v. Potter, 48 N.M. 404, 151 P.2d 748; Campbell v. Campbell, supra; Wood, The Community Property Law of New Mexico p. 38 (1954).

But when there is a commingling of a negligible amount of community property with a large amount of separate property so that the separate property can no longer be identified, it would be most inequitable to follow the above-mentioned rule. There is language in the case of Stroope v. Potter, supra, which recognizes that the relative amounts of separate property and community property which make up the commingled total is an important factor.

■ The proceeds from the sales of small numbers of cattle, chickens and hogs were, of necessity, very small. These chickens and animal raising operations were extremely limited as is clearly demonstrated in the record. Thus we cannot accede to the view that these small proceeds, even if deposited in A. J. Conley's separate bank account, would serve to turn all of his separate property into community property. The doctrine of de minimis non curat lex must be applied.

■ Appellant contends, and we agree, that even if the household furniture was the separate property of A. J. Conley, it should have been set apart to her in her own right under the mandate of Section 29-1-11, N.M.S.A., 1953 Compilation. This section provides as follows:

"When the decedent leaves a widow, all personal property which in his hands as the head of a family would be exempt from execution, *after being inventoried and appraised, shall be set apart to her as her property in her own right,* and shall be exempt in her hands as in the hands of the decedent." (Emphasis added.)

■ Section 24-5-1, N.M.S.A., 1953 Compilation, sets forth the articles and amounts that are exempt under the above-quoted section, and these exemptions are just enough to cover all of the articles of household furniture listed in the amended inventory.

Section 29-1-11, supra, vests an unqualified right in the widow to such property immediately upon the husband's death. This is true whether or not the household furniture is separate or community property. The case of In re White's Estate, 41 N.M. 631, 73 P.2d 316, makes this clear. This court there directed that the exempt property be turned over to the heirs of the widow and that the trial court *then* determine whether the property left by the decedent husband was separate or community property and apportion it accordingly.

The judgment is reversed and the cause remanded with a direction to the court to enter an order requiring the executor to set aside to appellant the articles of household furniture listed in the amended inventory. The judgment is affirmed in all other respects.

It is so ordered.

McGHEE, COMPTON, CARMODY and MOISE, JJ., concur.

On Motion for Rehearing

LUJAN, Chief Justice.

 After considering the brief in support of the motion for rehearing, we are constrained to the view that the 160-acre tract acquired from Robertson, which makes up a portion of the 640-acre "Austin" tract, is community property. This 160 acres was deeded to A. J. Conley on September 28, 1940. But the purchase price of $1,600, which was paid out of A. J. Conley's separate property, was not made until sometime considerably later. The presumption then was that this 160 acres is community property. This presumption was not successfully rebutted. Thus appellant owns a community one-half interest in the Robertson tract, subject to an indebtedness of $800 to the separate estate. The evidence as to the rents and profits from this particular 160 acres is unsatisfactory, but in any event they were relatively small in relation to the total income from the separate estate. Accordingly no worthwhile attempt can be made to sort out these rents and profits.

The above change in the original opinion does not have the effect of disturbing the rationale on which it was based. We conclude that in all other respects the original opinion was correct and must stand as written.

The motion for rehearing will be denied.

It is so ordered.

McGHEE, COMPTON, CARMODY and MOISE, JJ., concur.