384 P.2d 699

**Hilda S. BURLINGHAM, Plaintiff-Appellant,**

**v.**

**Lloyd BURLINGHAM, Defendant-Appellee.**

**No. 6921.**

Supreme Court of New Mexico.

March 29, 1963.

Rehearing Denied Sept. 11, 1963.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellant.

Wm. Byron Darden, Las Cruces, for appellee.

CHAVEZ, Justice.

Appellant, Hilda S. Burlingham, brought suit for declaratory judgment against her estranged husband, Lloyd Burlingham, to determine whether certain land located in Dona Ana County, conveyed to Lloyd Burlingham by deed dated January 20, 1942, is the separate property of appellant. Appellee answered alleging that the property in question is community property and that he is entitled to a one-half community interest therein. The case was tried by the trial court without a jury and judgment was entered decreeing that appellant and appellee "are joint owners, each owning an undivided one-half interest," in and to the land involved. From this judgment, Hilda S. Burlingham appeals. The parties will be referred to as they appeared in the court below.

The trial court made the following findings: That plaintiff and defendant were married in El Paso, Texas, on February 8, 1936, at which time plaintiff was 38 years of age and defendant was 26 years of age; that following their marriage and at all times material they were residents of El Paso, Texas, but domiciled at El Paso, Texas, or Juarez, Mexico; that at the time of the marriage of the parties plaintiff owned as her separate property a bank account in the name of Hilda S. Coonse in the State National Bank of El Paso, Texas, and was the beneficiary, as her separate property and estate, of a trust income from her father, and later from the estate of her father; that on or about March 1, 1936, plaintiff and defendant opened a joint account in the State National Bank of El Paso, Texas, into which all monies received by either of them and from whatever source were deposited; that said account was in the name of Hilda S. Burlingham and Lloyd Burlingham, without either having supervision over the other in said account, and either party was authorized to and did draw checks on said account; that the funds in said account, regardless of the amount or the time, were always considered by the parties to be their joint property; that plaintiff and defendant have stated previously, and now state, that it was the intention of both parties to have, hold and own all that they had jointly and to share all that they had; that on January 20, 1942,

the defendant purchased a tract of land located about eight miles northwest of El Paso, Texas, containing 515.53 acres, being a portion of the Santa Teresa Grant and described in warranty deed recorded in Dona Ana County, New Mexico; that the funds for said purchase were paid from the joint bank account of plaintiff and defendant in the State National Bank of El Paso; that it was the intent of both plaintiff and defendant that title to said 515.53 acres of land be taken in their names jointly, but the deed was made out with Lloyd Burlingham as the sole grantee and the title so remains; that defendant, on January 22, 1942, drew a check on the joint bank account of the parties in the State National Bank of El Paso for $4584.30 to consummate acquisition of said land, which said check was paid from said joint bank account on January 25, 1942; that prior to the payment of either of the foregoing checks, and as of December 15, 1941, there was a balance in the aforesaid joint bank account in the State National Bank of El Paso in the sum of $3.19; that between December 15, 1941, and January 25, 1942, all deposits in said joint account were the separate estate and trust income of plaintiff, except the sums of $39.71 and $200.00 dividend income of defendant.

The court concluded as a matter of law that plaintiff and defendant are each the owner of and are entitled to an undivided one-half interest in and to the 515.53 acres of land in controversy.

The evidence shows that plaintiff had been previously married and had two sons from that marriage. It is undisputed that on December 15, 1941, the balance in the joint bank account was $3.19; that between December 15, 1941, and January 25, 1942, plaintiff deposited her separate estate in the joint bank account in the total sum of $15,936.92; that the $200.00 deposit was a dividend check from five shares of stock in plaintiff's father's firm, Blanchard Machine Company, which stock plaintiff had given to defendant; and that the $39.71 deposit was from the Mexico magazine which the parties owned and published.

The evidence also shows that the Mexico magazine lost more than $300.00 from December 15, 1941, to January 25, 1942; that from the date of the marriage and over a period of six years the deposits from the Mexico magazine were negligible and that it lost more than $6000.00.

The evidence further shows that the earnest money check in the amount of $500.00 was drawn from the joint account by defendant and paid by the bank on December 31, 1941, and the balance of the purchase price was paid by check on the joint account drawn by defendant in the sum of $4584.30 and paid on January 25, 1942.

The evidence also shows that prior to the marriage defendant was working for his mother who had a tourist office and published a pamphlet entitled "Tours in Mexico" for which he received no compensation. After the marriage, defendant engaged only in publishing the Mexico magazine which was supported by plaintiff's funds. Plaintiff's income was from her mother's estate, from monies sent to her by her father until his death, and thereafter from a trust created by her father. Defendant had no other source of income and plaintiff and defendant were engaged in no other employment or business during the period here involved. Defendant had no separate property except the five shares of Blanchard Machine Company stock given to him by plaintiff. The publication of the Mexico magazine produced no net income, but was carried on by plaintiff and defendant until 1944, at which time defendant went East and obtained employment with Reuters, the British News Service.

Concerning the trust and confidence plaintiff had in defendant, and in explanation of why plaintiff allowed defendant to handle her money, property and affairs, she testified:

"Q. Now, after your marriage, Mrs. Burlingham, just tell the Court what you did with respect to allowing or permitting Mr. Burlingham to handle your money and your property and your affairs and why did you do it?

"A. Well, I did it because it was more convenient for one—for a man of the household to be able to pay bills, he was managing the affairs, I thought it would be humiliating to him if I had to make out all of the checks. I don't know any other reasons."

Defendant bases his claim of ownership of a one-half interest on the basis of the land being community property. Defendant's contention is that all monies placed in the joint bank account were a general mutual fund for all needs of the family, or of any individual member thereof who particularly needed it, and that it became community property. Defendant testified:

"Q. * * * The use or disposition made of any such income, and by whom, and what amount, if any, was contributed to the purchase of Santa Teresa?

"A. * * * The use and disposition of such income was that it was put into the joint checking account which was our general, mutual, fund for all needs of the family. The use or disposition was made by the family in general or any individual who particularly needed it. I don't know the figures or the amount that

was contributed to the purchase of the Santa Teresa property. It would be impossible to determine since all money was put into a general fund. It would be like pouring a pail of water into a tub partially full of water and then dipping some out of it. It would be impossible to determine how much of that pail was in the part dipped out. In any case, the amounts or proportion of contribution has nothing to do with the concept of community property, at least our concept of it as lay people."

On cross-examination plaintiff testified:

"A. Yes, but that has to be restricted in that I had given him everything. I meant I had given him everything necessary for our common good marriage, his education, his support, what he could not supply. It was not that I was giving any property away, taking away from my children."

As to plaintiff's use of the term "joint property," on cross-examination, she testified:

"A. By joint, I was not using the legal term. I don't know law. I meant things together for our married life.

\*　\*　\*　\*　\*　\*

"A. My use of 'community property' has nothing to do with law. It is something we should use together, in my marriage to him."

To questions propounded by the court as to her use of such terms, plaintiff answered:

"BY THE COURT: In other words, you intended to give him half interest?

"A. No, I never gave anything other than Blanchard Machine [stock].

"BY THE COURT: If you didn't give him any interest in those places, they would be your separate property?

"A. I believe they are and I maintain they are."

Plaintiff's first point upon which she relies for reversal is:

"I. With husband and wife, the status of title to property as being community, separate or otherwise, is determined as of the time of acquisition, and where property is acquired during marriage through the sale or exchange of property, such acquired property is held in the same status to which it is traceable."

■ In answer to plaintiff's point I, defendant's first contention is that plaintiff has not complied with Supreme Court Rule

15, (§ 21–2–1(15), N.M.S.A., 1953 Comp.). We cannot agree. Defendant cites Swallows v. Sierra, 68 N.M. 338, 362 P.2d 391, and many of our cases which hold that where no direct attack is made on the trial court's findings of fact, or where the question of the sufficiency of the evidence to support the findings is not raised, ordinarily the trial court's findings will not be disturbed. Plaintiff concedes this rule. However, plaintiff's appeal does not involve the substantial evidence rule. It involves the question of law going to the sufficiency of the facts to support the judgment and this we can consider. Witherspoon v. Brummett, 50 N.M. 303, 176 P.2d 187. Compare New Jersey Zinc Co. v. Local 890 of International Union, etc., 57 N.M. 617, 261 P.2d 648. The proposition of law is supported and argued fully in plaintiff's brief in chief under point I. Besides, this is not a jurisdictional matter and defendant is not prejudiced thereby. Clodfelter v. Reynolds, 68 N.M. 61, 358 P.2d 626; Barelas Community Ditch Corp. v. City of Albuquerque, 61 N.M. 222, 297 P.2d 1051; and Armijo v. National Surety Corp., 58 N.M. 166, 268 P.2d 339.

New Mexico, as other Western community property states, has an express statute concerning the separate property of the wife, § 57–3–4, N.M.S.A., 1953 Comp., which provides:

"57–3–4. Wife's separate property— Sources—Right of conveyance.—All property of the wife owned by her before marriage and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof is her separate property. The wife may without the consent of her husband convey her separate property."

With respect to community property, the pertinent provisions of § 57–4–1, N.M.S.A., 1953 Comp., read:

"57–4–1. Community property— Source—Presumptions.—All other real and personal property acquired after marriage by either husband or wife, or both, is community property; but whenever any real or personal property, or any interest therein or encumbrance thereon is acquired by a married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property. * * *"

This court is committed to the rule set out in Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010, as follows:

"Property acquired in community property states takes its status as community or separate property at the very time it is acquired, and is fixed by the manner of its acquisition. Woods v. Naimy, 9 Cir., 69 F.2d 892; Leinnewebber v. George, Tex.Civ.App., 95 S.W.2d 478; Wilson v. United States, 9 Cir., 100 F.2d 552. If property is ac-

**440**

quired by the wife it is her separate property at that very time, and the fact that a part of the purchase money is later paid out of the community or seprate estate of the other spouse does not alter such status. * * *"

See also McElyea v. McElyea, 49 N.M. 322, 163 P.2d 635.

In the case of In re White's Estate, 41 N.M. 631, 73 P.2d 316, it is said:

" * * * This court has decided in many cases that property acquired during marriage is presumed to be community property in absence of proof on the question, Barnett v. Wedgewood, 28 N.M. 312, 211 P. 601; Carron v. Abounador, 28 N.M. 491, 214 P. 772; Roberts v. Roberts, 35 N.M. 593, 4 P. (2d) 920; and in the absence of any evidence of whether property belongs to the separate or community estate, it is presumed to be community property, but this presumption may be overcome by proof that it is separate property. Strong, Trustee, v. Eakin et al., 11 N. M. 107, 66 P. 539. * * *"

In Katson v. Katson, 43 N.M. 214, 89 P. 2d 524, we held that the separate property rights of husband and wife are just as sacred as is the right of the parties to their community property.

■ In the recent case of Conley v. Quinn, 66 N.M. 242, 346 P.2d 1030, appel-lant, Ola Conley relied heavily on the presumption that the property acquired after marriage was community property. This court noted that this presumption is rebutted when the separate character of the property is proved by a preponderance of the evidence and said:

"The Austin tract was acquired some four or five months after the marriage of A. J. Conley to appellant. It clearly appears that Mr. Conley was not gainfully employed in a trade, profession, or otherwise, not an unusual fact in view of his advanced age. There is simply no evidence to indicate that during this four-month period any community property was acquired. It necessarily follows that the down payment came from the separate funds of A. J. Conley. Appellant recognizes that this tract was paid off by 1948 with a part of the proceeds from the sale of the school section. We have already determined that the school section lease was the separate property of A. J. Conley. And property acquired after marriage in exchange for or with the proceeds from property owned before marriage remains separate property. * * *"

We also said:

" * * * These small proceeds were community property and, as appellant contends, the general rule is to the effect that when separate property has

been so intermingled with community property that the separate property cannot be traced or identified, it falls under the presumption of community property. Stroope v. Potter, 48 N.M. 404, 151 P.2d 748; Campbell v. Campbell, supra; [62 N.M. 330, 310 P.2d 266] Wood, The Community Property Law of New Mexico, p. 38 (1954).

"But when there is a commingling of a negligible amount of community property with a large amount of separate property so that the separate property can no longer be identified, it would be most inequitable to follow the above-mentioned rule. There is language in the case of Stroope v. Potter, supra, which recognizes that the relative amounts of separate property and community property which make up the commingled total is an important factor."

With respect to property acquired with separate property, the rule is stated in 11 Am.Jur., § 26, pp. 190–191, as follows:

" * * * Generally in this country, property of a husband or wife need not, in order to maintain its character as such, be preserved in specie or in kind; separate property remains such through all its mutations and changes, so long as it can be clearly and indisputably traced and identified. It follows, therefore, that the proceeds of the sale of separate property and property acquired therewith or that which is purchased with money which was separate property or taken in exchange for separate property ordinarily continue to be separate property. * * * "

We followed the above stated rule in Stroope v. Potter, 48 N.M. 404, 151 P.2d 748, and in Conley v. Quinn, supra.

While the evidence shows that during the period from December 15, 1941, to January 25, 1942, the plaintiff may have commingled her separate funds ($15,936.92) by depositing said sum in the joint bank account which, on December 3, 1941, had a balance of $3.19, and that the only funds deposited by defendant during said period are shown to be in the sum of $239.71, there was evidence from which the court was able to find that all deposits in said joint account, during the period above mentioned, were the separate estate and trust income of plaintiff. The mere commingling of separate property of plaintiff with community property does not change its character from separate to community property, unless the separate property so commingled cannot be traced and identified. Thomasset v. Thomasset, 122 Cal.App.2d 116, 264 P.2d 626; Kenney v. Kenney, 128 Cal.App.2d 128, 274 P.2d 951. Thus it is clear that the funds deposited by plaintiff in the joint bank account were her separate funds and since the source of the funds with which

the land was purchased was clearly and indisputably traced and identified as plaintiff's separate property, a mere change or identity during marriage did not alter its status and it remained as her separate property. We so hold.

Defendant contends, however, that the plaintiff transmuted her separate property into community property, citing §§ 57–2–6, 57–2–12, N.M.S.A., 1953 Comp., and Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781. It is true that Chavez v. Chavez, supra, overruled our previous decisions in McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250, and Newton v. Wilson, 53 N.M. 480, 211 P.2d 776, and that this court adopted the dissenting opinion of Justice Sadler in both the McDonald and Newton cases, insofar as they state his construction of § 52–2–6, supra, declaring that either husband or wife may enter into any transaction with each other respecting property. However, in Chavez v. Chavez, supra, this court also stated:

> "Proof to support such transmutation must be clear, strong and convincing; a mere preponderance of the evidence will not suffice to effect it."

Thus with the above limitation transmutation of property between husband and wife was approved. In re Trimble's Estate, 57 N.M. 51, 253 P.2d 805.

It may be of interest to note that the two California cases, (Yoakam v. Kingery, (1899), 126 Cal. 30, 58 P. 324, and In re McCauley's Estate, (1903), 138 Cal. 546, 71 P. 458), decided before the enactment of §§ 57–2–6 and 57–2–12, supra, and upon which Justice Sadler based his dissent in McDonald v. Lambert, supra, were cases dealing with written agreements for transmuting property. This court has never recognized the later California cases which allow transmutation of the status of property upon any evidence, or upon a mere preponderance of proof.

■ There are several reasons why we cannot agree with defendant's contention. In New Mexico, a husband and wife may hold property as joint tenants, tenants in common, or as community property. Section 57–3–2, N.M.S.A., 1953 Comp. The trial court did not find, as pleaded and as contended by defendant, that the land was community property, but the court made a conclusion of law that plaintiff and defendant are each the owner of a one-half interest in the land. Nothing is said in the trial court's findings that plaintiff transmuted her separate property into community property. There is no evidence that plaintiff transmuted her separate property to that of joint tenancy and no joint tenancy was created. In re Trimble's Estate, supra. There is no evidence that the parties intended to hold the land as tenants in common. Neither is there the required showing that a valid gift was made. The essential elements of a

gift between husband and wife are delivery, actual or constructive, and intent of the donor to divest himself of all dominion and control. 26 Am.Jur., § 256, p. 864. See also, Webb v. Richardson, 69 N.M. 15, 363 P.2d 626.

The record is not clear as to what prompted the trial court to make the above mentioned conclusion of law, unless it be the finding that the parties considered the bank account to be their joint property, and that the parties made statements that it was their intention to have and own all that they had jointly. Regardless of this, the question remains—are the findings and the evidence upon which they are based sufficient to support the judgment, that transmutation of plaintiff's separate property into community property was effected? We think not. As heretofore stated, the proof required to effect transmutation must be clear, strong and convincing; a mere preponderance will not suffice. We do not believe, under the state of the record, that the evidence is sufficient to meet the standards required on the theory of transmutation, and thus the evidence is not sufficient to support the conclusion of law that the defendant is entitled to a one-half interest in the property.

Since the joint bank account was in El Paso, Texas, it is pertinent to consider the applicable law in Texas. All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward, by gift, devise or descent as also the increase of all lands thus acquired, is the separate property of the wife. Vernon's Ann.Civ.St. Art. 4614(a). Vernon's Ann.Civ.St. Art. 4619, § 1, provides:

> "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; * * *."

Vernon's Ann.Civ.St. Art. 4624a, § 1, provides that a husband and wife may, by written instrument, partition between themselves in severalty or into equal undivided interests all or any part of their existing community property, or exchange between themselves the community interest of one spouse in any property for the community interest of the other spouse in other community property. Such partition or exchange shall be effectuated by a written instrument subscribed and acknowledged by both spouses in the manner now required by law for the conveyance of realty.

In Texas, as in New Mexico, the property of the wife takes the status as separate or community property as of the time of its acquisition. Reed v. Reed, (Tex.Civ. App.1955), 283 S.W.2d 311. Also, as in New Mexico, it has been held that as long as the identity of property or of funds can.

be traced and identified, a wife's separate estate may undergo changes and mutations without affecting its character as separate property. Coggin v. Coggin, (Tex.Civ.App. 1947), 204 S.W.2d 47. See also, Farrow v. Farrow, (Tex.Civ.App.1951), 238 S.W.2d 255.

Under Texas law, when separate property of a husband or wife becomes so commingled with community property that it cannot be identified, the separate property so commingled becomes community property. Duncan v. United States (5 C.C.A. 1957), 247 F.2d 845.

Under Art. 4624a, § 1, supra, it may be that transmutation of community property into separate property of the spouse is permissible if it is accomplished in the prescribed manner. However, the question of whether separate property can be transmuted into community property is not so clear. In Belkin v. Ray, 142 Tex. 71, 176 S.W.2d 162, a wife conveyed her separate property to a trustee who then conveyed it to both the husband and wife. This was held to vest an undivided one-half interest in the husband as his separate property. Oral evidence of an intent to vest title in the community was held inadmissible for the purpose of invalidating the conveyance.

It would seem that the only basis the husband could use to claim a portion of his wife's separate fund, which she has deposited in a joint account, is that of a gift.

Thus, if the husband and wife want to convert their separate property into community property they must do it in such a way that the transaction can be fitted into the legal definition. Because of the legal definition, it was held in Kellett v. Trice, 95 Tex. 160, 66 S.W. 51, and Tittle v. Tittle, 148 Tex. 102, 220 S.W.2d 637, that the wife's separate property cannot be converted into community property by gift because the law says that property acquired by gift is separate property.

Thus it would appear that under Texas law plaintiff's separate funds deposited by her in the joint bank account were her separate property. There was no transmutation because it was not effected by a written instrument subscribed in the manner provided by law for conveyance of realty. Also, if the funds with which the property was purchased can be definitely and indisputably traced to the separate funds of one of the spouses, they are the separate property of that spouse.

The evidence in the instant case is undisputed that from the date of the marriage until 1944, when defendant went East, defendant's only source of income was from the publication of the Mexico magazine, which never produced a net income. From February 8, 1936, the date of the marriage and over a six-year period, the deposits from the Mexico magazine were negligible and it lost over $6000 during said period.

Thus, during the pertinent period surrounding the purchase of the land in question, there were no community funds with which to purchase the property. Under the evidence, plaintiff's separate funds received by her between December 15, 1941, and January 25, 1942, and which were deposited in the joint bank account, were clearly and indisputably traced and identified and were her separate property. We cannot escape the view that the trial court, in applying the law to the facts in this case, fell into error in its conclusion of law that plaintiff and defendant were each the owner of an undivided one-half interest in the land. A mere change or identity during marriage of plaintiff's separate property will not alter its status and it remains plaintiff's separate property.

It follows, therefore, that the judgment of the district court should be reversed and the cause remanded to the district court with direction to set aside the judgment heretofore entered, and to enter judgment for plaintiff as the owner of the tract of land here involved.

In view of our disposition of this case, it is unnecessary to consider plaintiff's point II.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

NOBLE, J., concurs in the result.

MOISE, J., dissenting.

MOISE, Justice (dissenting).

It seems to me that in considering the case, the majority has lost sight of the fact that since the property was acquired in New Mexico in the name of a married man, it is presumptively community property. § 57–4–1, N.M.S.A.1953.

We start out with this presumption. It is a rebuttable presumption subject to being overcome by proof in the case. If the money used for the purchase was separate property of the wife in Texas, and I am willing to assume that it was, brought into New Mexico to make the purchase, this might be sufficient proof to overcome the presumption of the community estate in the property and establish its separate character, if nothing more appeared. Conley v. Quinn, 66 N.M. 242, 346 P.2d 1030.

However, there is considerable proof supporting finding No. 8 of the trial court to the effect that "it was the intention of both parties to have and hold and own all that they had jointly and to share all that they had." This intention was clearly stated concerning the holding of the real estate in dispute. Since intention is controlling, Menger v. Otero County State Bank, 44 N.M. 82, 98 P.2d 834; In re Trimble's Estate, 57 N.M. 51, 253 P.2d 805; Tomaier v. Tomaier (1944), 23 Cal.2d 754, 146 P.2d 905, why do we have to look further? This

is particularly true since there is no attack made on the findings.

There is no question that finding No. 8 is supported by substantial evidence, but the exact meaning of "joint ownership" is not clear. The only estates in which property can be held by husband and wife are as "joint tenants, tenants in common, or as community property." § 57–3–2, N.M.S.A. 1953. "Joint ownership" does not necessarily mean "joint tenancy." Each of the mentioned estates creates a form of joint ownership. See In re Huggins' Estate, 96 N.J.Eq. 275, 125 A. 27.

The majority have quoted some of the evidence and there is considerable more to the same effect. Since no attack is made on the findings, I do not see the materiality of the question of whether the proof must be by "clear, strong and convincing" evidence or simply by substantial evidence.

I would point out that there is no basis in authority prior to Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781, for imposing a measure of proof different or more stringent in a case of transmutation than in other cases. This is discussed most forcefully and effectively by Justice Sadler in his dissent in In re Trimble's Estate, supra. I feel that just as Justice Sadler's dissent in McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250, was accepted by this court as the law in Chavez v. Chavez, supra,

so should we now accept his dissent in In re Trimble's Estate, supra, as the law covering the proper measure of proof in a case such as this.

Be this as it may, it is my view that everything considered, the trial court's findings supported by substantial evidence should be upheld by us, and all reasonable inferences which may be drawn from the proof should be resolved in support of the findings. Nally v. Texas-Arizona Motor Freight, Inc., 69 N.M. 491, 368 P.2d 806; Davis v. Hartley, 69 N.M. 91, 364 P.2d 349. Compare Huston v. Huston, 56 N.M. 203, 242 P.2d 495.

The cause should be remanded to the district court so that proper findings and conclusions could be made as to the nature of the estate intended and resulting when the land in question was purchased and title taken in the name of the husband, this determination to be based on the facts as proved and in the light of the applicable law of New Mexico. An erroneous result is reached when it is determined that the nature of the money in Texas prior to its being brought to New Mexico and invested in New Mexico real estate is controlling. This is what the majority have done. They give no weight whatsoever to the testimony as to the intention of the parties, nor to the trial court's findings with reference thereto, nor to the presumption of community ownership resulting from taking title in the hus-

band's name. In my view, these are the controlling considerations.

For the reasons stated, I respectfully dissent.